## A02A1327. VESTER v. BANKS.
### (570 SE2d 586)

MILLER, Judge.

A neighborhood restrictive covenant prohibited the construction of "modular" homes. One landowner poured a concrete basement and foundation and had preconstructed units or segments such as finished walls or rooms trucked in on trailers to be placed on top of the foundation and attached. We hold that the restrictive covenant is not unenforceably vague and that it prohibited the construction of the prefabricated home brought in on the trailers. Accordingly, we affirm the trial court's injunction enjoining construction of the home.

Banks (a developer) recorded covenants and restrictions relating to a subdivision, one of which prohibited the construction of "modu-

lar" homes. After the covenants were filed, Vester purchased a lot in the subdivision from his ex-wife. Vester then purchased a "manufactured home" from Tomorrow Homes and began construction on the lot. He poured the foundation of the basement and had a flatbed trailer parked on the street, on which lay the prefabricated units to be used to construct the house.

On July 7, 2001, Banks filed an action against Vester for violation of the restrictive covenants. The court issued a temporary restraining order against Vester, enjoining further construction of the structure. At the interlocutory injunction hearing, Vester claimed that his home was an industrialized building, not a modular home. He testified that the salesman at Tomorrow Homes told him that the home was not "modular" but was a "systems built" home and legally defined as "industrialized housing." However, the trial court held that the language of the covenants prohibiting "modular homes" from the subdivision included "industrialized buildings," and specifically included Vester's home. Vester appeals the grant of the interlocutory injunction, contending that "modular" is unenforceably vague and in any case does not include industrialized buildings.

OCGA § 8-2-111 (3) describes an industrial building as "any structure or component thereof which is wholly or in substantial part made, fabricated, formed, or assembled in manufacturing facilities for installation or assembly and installation on a building site. . . ." *Hill v. Duncan*, 249 Ga. App. 342 (548 SE2d 83) (2001), used the two terms "modular" and "industrialized" interchangeably to refer to a prefabricated structure similar to that being constructed here. The developer had a restrictive covenant against "mobile homes" and tried to use it to prohibit the home from being constructed. The court held that the prefabricated modular home was "industrial," not mobile, and was therefore not prohibited by the covenant. Attorney General Opinion 84-4 similarly makes the distinction between "mobile homes" and "modular or industrialized homes," indicating that Part 1 (OCGA §§ 8-2-110 through 8-2-119) deals with "manufactured or modular" and that Part 2 (OCGA §§ 8-2-130 through 8-2-143) has been limited to "mobile."[1]

Vester asserts that the term "modular" is vague and ambiguous and therefore unenforceable. The dictionary defines "module" as "any of a set of units to be variously fitted together. . . ." Webster's New World Dictionary (3rd ed. 1990), p. 380.[2] In the building context,

---

[1] Attorney General Opinion 84-4 also states "that Congress also intended [a] review of these units under the state industrialized building or modular home statutes."

[2] We cannot take judicial notice of city or county ordinances, see *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996), but we do acknowledge that numerous such ordinances in Georgia frequently use and define the term "modular homes" as a factory-

therefore, a modular home consists of a number of prefabricated units, to be fitted together.

Enforcing similar restrictive covenants, other states have applied the same definition.[3] In *Arnoti v. Lukie*, 350 S.C. 177 (564 SE2d 691) (App. 2002), for example, the court held that the home being constructed was a "modular" home and was therefore prohibited by the neighborhood's restrictive covenant. Id. at 180. Similar to Banks's covenant, the covenant in *Arnoti* prohibited "modular homes or mobile homes." Id. at 178. *Arnoti* defined "modular" as a structure "built elsewhere and then transported to the owner's lot, where it is installed on top of a foundation that is poured at the home site." Id. at 179, n. 1.

We hold that similar to an industrialized building, a modular home is a factory-fabricated, transportable structure, consisting of units that are brought in on a trailer, to be constructed on top of a permanent foundation at the site for residential use. This is not so vague or indefinite as to be unenforceable. See *White v. Legodais*, 249 Ga. 849-850 (1) (295 SE2d 99) (1982). Since Vester's home unquestionably meets this description, the restrictive covenants prohibit it, and the trial court did not err in enjoining Vester from constructing the house.

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

APPENDIX.

City of Ashburn Code of Ordinances, Appendix A Zoning, §§ 2-22A; 2-29A; Athens-Clarke City and County Code of Ordinances § 9-2-1; Camden County Code of Ordinance, Appendix B Zoning Ordinance, § 302 (37); Clarkston City Code of Ordinances, Appendix A Zoning, Article III; Cobb County Code of Ordinances § 134-1; Dalton City Code of Ordinances §§ 70-1; 70-4; DeKalb County Code of Ordinances

---

fabricated, transportable structure, consisting of units designed to be incorporated at a building site on a permanent foundation into a structure to be used for residential purposes. See Appendix. Although this acknowledgment is not a basis for our decision, neither is it inconsistent therewith.

[3] See *Carr v. Michael Motors*, 210 W. Va. 240, 246 (557 SE2d 294) (2001) (citing the National Manufactured Housing Construction and Safety Standards Act of 1974, the court states that a two-story single-family dwelling assembled from segments transported on trailers was a "modular" home); *Howell v. Hawk*, 750 NE2d 452 (Ind. App. 2001) (stating that the prefabricated house, which was identical in appearance to other homes in the subdivision and had a permanent foundation, was still a "modular" or "manufactured" home); *Briggs v. Rankin*, 127 N.C. App. 477, 480-481 (491 SE2d 234) (1997) (setting out five factors to determine what type of home exists: (1) the consistency with HUD's national regulations, or with the Building Code; (2) whether the structure is attached to a permanent foundation; (3) whether, after constructed, the structure can easily be moved or has to be moved like a site-built home; (4) whether title to the home is registered with the Department of Motor Vehicles; and (5) how the structure is delivered to the home site).

§ 27-31; Fayetteville City Code of Ordinances § 94-3 (c); Forest Park City Code of Ordinances § 8-8-2 (25) (c); Fulton County Code of Ordinances, Appendix B Zoning Resolution, § 3.3.13 (M); Garden City Code of Ordinances § 90-5 (b); Hall County Code of Ordinances § 17.20.750; Jonesboro City Code of Ordinances § 86-1 (b); Kennesaw City Code of Ordinances, Appendix A Zoning, §§ 410.89; 410.90; Lee County Code of Ordinances § 42-4; Marietta City Code of Ordinances, Zoning Ordinance, § 724.02; Norcross City Code of Ordinances § 106.5; Putnam County Code of Ordinances § 66-4 (c); Sandersville City Code of Ordinances § 8-3-5 (9); Smyrna City Code of Ordinances, Appendix A Zoning, § 402.45; Snellville City Code of Ordinances, Appendix B Zoning Ordinance, § 6.2; Spalding County Code of Ordinances, Appendix IV Zoning, § 203 (z); St. Marys City Code of Ordinances § 110-8 (b); Sumter County Code of Ordinances § 42-31; Suwanee City Code of Ordinances, Appendix A Zoning, Article III; Sylvania City Code of Ordinances, Appendix B, § 8-3002-2; Warner Robins City Code of Ordinances, Appendix Z Zoning Ordinance, § 32.64.

DECIDED AUGUST 9, 2002 —

*Donald W. Huskins*, for appellant.
*Rich & Smith, Randolph G. Rich*, for appellee.

