A07A0983. WESTPARK WALK OWNERS, LLC v. STEWART HOLDINGS, LLC et al.
(655 SE2d 254)

ADAMS, Judge.

Westpark Walk Owners, LLC ("Westpark") appeals from the trial court's denial of its motion for interlocutory injunction, seeking to enjoin Stewart Holdings, LLC from leasing commercial space in Westpark Walk Shopping Center in Peachtree City to Gifts of Art, LLC d/b/a Xelk Communications ("Xelk") and Zel J. Brooks d/b/a Xelk Visual Communications ("Brooks"). We affirm.

Westpark contends that Xelk's business violates a Declaration of Restrictions, Covenants and Grant of Easements ("Declaration") imposed on the property by the original owner, WPW Limited Partnership ("WPW"). The shopping center consists of two tracts, and WPW recorded the Declaration in connection with both tracts on April 3, 2003. On June 16, 2004, WPW sold the smaller of the two tracts to Stewart Holdings, pursuant to a limited warranty deed, which provided that the property was being conveyed subject to the Declaration. WPW conveyed the remainder of the shopping center property to Westpark by quitclaim deed.

The pertinent portion of the Declaration provides:

No portion of the Shopping Center Property shall be sold, leased, subleased or otherwise used for the purpose of conducting therein or thereon (i) a manufacturing operation, (ii) a factory, (iii) any industrial usage, (iv) a processing or rendering plant, (v) the sale or display of pornographic materials, (vi) an adult entertainment facility (i.e., featuring nude or semi-nude dancing or entertainment), (vii) any type of head shop or drug paraphanelia [sic] or (viii) funeral parlor. In addition, *no portion of The Shopping Center Property shall be used as* an oriental restaurant, florist, dry cleaner, *printing or copying shop*, mailing and package service store (like Mail Boxes, etc.) without [WPW's] express written consent, which consent may be denied so long as a similar use is already in existence or proposed as a use in The Shopping Center.

(Emphasis supplied.)

Brooks, the operator and general manager of Xelk, began looking for office and retail space in Peachtree City in early 2006. She wanted to open a business to provide "graphic and website design, as well as various types of printing to other businesses and individuals." Brooks contacted Westpark about leasing retail space in the shopping center, and Westpark's agent showed Brooks space on the upper floor of its portion of the complex and mailed Brooks a lease form. The cover letter made clear, however, that the lease form was not a commitment by Westpark to lease the space, and there is no evidence that WPW had consented to a lease with Xelk. Brooks ultimately decided she did not want to lease upstairs space and contacted a broker to assist her in finding a suitable spot. The broker located space downstairs in the portion of the shopping center owned by Stewart Holdings. Brooks entered into a lease for that space in July 2006, and after expending over $100,000 to make modifications and install equipment, began operating Xelk at the location on October 2, 2006.

Xelk marketed its business as "One Place[,] One Store For All Your Printing Needs," and its marketing brochure states that it offers both digital and laser printing services, as well as transfer and embroidery, "Logo creation," "Graphic Design," "Installations," "Marketing Adviser," and advertisement. In addition, Xelk's materials expressly offered "custom printing services" and "professional printing solutions."

Westpark asserts that it has a tenant in its portion of the shopping center that operates a printing and copying shop. On September 22, 2006, after learning of Brooks' lease, Westpark sent a letter notifying Stewart Holdings that it intended to enforce the provisions of the Declaration prohibiting the operation of a printing and copying shop on the remainder of the property. Stewart Holdings' response letter acknowledged the applicability of the Declaration to the property, but denied that Xelk's business violated its provisions.

Westpark then initiated this lawsuit seeking injunctive relief and monetary damages. The trial court subsequently held a hearing on Westpark's motion for interlocutory injunction. After hearing argument and considering documentary evidence, the trial court denied the motion on the grounds that (1) Xelk was not a "printing or copy shop," but rather a full-service graphic design shop; (2) after balancing the equities, Westpark failed to demonstrate that it would suffer irreparable injury; and (3) Westpark has an adequate remedy at law.

Westpark contends that the trial court erred in requiring that Westpark make a showing of irreparable harm before enforcing the restrictive covenant and in holding that Westpark had an adequate remedy at law. Further, Westpark asserts that the trial court erred in

holding that Xelk was not operating a printing or copy shop and in failing to construe the covenant and to enforce it by injunction.

As a general rule, a trial court has broad discretion in deciding whether to grant or deny an interlocutory injunction, and this Court will not disturb the trial court's decision absent manifest abuse of discretion. *E-Lane Pine Hills v. Ferdinand*, 277 Ga. App. 566, 570 (627 SE2d 44) (2006). Further, "[w]here the trial court, in ruling on an interlocutory injunction, makes findings of fact based upon conflicting evidence, this court will not disturb the ruling as an abuse of discretion unless the denial or granting of the injunction was based on an erroneous interpretation of the law." (Footnote omitted.) Id. But "[w]here there is no material conflict in the evidence," "the trial judge was not vested with any discretion to grant an interlocutory injunction." (Citation omitted.) *Godley Park Homeowners Assn. v. Bowen*, 286 Ga. App. 21, 23 (b) (649 SE2d 308) (2007).

Here, the evidence of record is not in conflict, as no issue of fact exists as to what Xelk does. The only evidence on that point comes from Xelk's own marketing materials, and there is no dispute to that evidence. Thus, the issue before the court was whether Xelk's activities qualified as a "printing or copying shop" under the language of the declaration, an issue of law. That makes the issue on this appeal one of law rather than discretion. *Godley Park Homeowners Assn. v. Bowen*, 286 Ga. App. at 23 (b). And "we owe no deference to the trial court's conclusions of law." (Citation omitted.) *Augusta Eye Center v. Duplessie*, 234 Ga. App. 226, 227 (506 SE2d 242) (1998).

1. As an initial matter, we find that Westpark is correct that it should not have been required to make a showing of irreparable injury in order to obtain an interlocutory injunction. Where an interest in land is threatened, "such harm is deemed irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed." (Citations omitted.) *Focus Entertainment Intl. v. Partridge Greene, Inc.*, 253 Ga. App. 121, 127 (4) (a) (558 SE2d 440) (2001) (physical precedent only). See also *Smith v. Pindar Real Estate Co.*, 187 Ga. 229, 235 (1) (200 SE 131) (1938) (injunctive relief may be appropriate for violation of restrictive covenant even where no substantial injury is caused by the breach or "even though the damages, if any, may be recoverable at law") (citation and punctuation omitted). Accordingly, the trial court erred in denying injunctive relief on the grounds that Westpark failed to prove irreparable injury or that it had an adequate remedy at law.

2. But even though irreparable harm may be assumed in a case involving the breach of a real estate covenant, the mere allegation of such a breach does not entitle the movant to an injunction. Rather, the trial court may deny injunctive relief if it appears unlikely that

the movant will prevail on the merits of its claim. *Toberman v. Larose Limited Partnership*, 281 Ga. App. 775, 779 (1) (637 SE2d 158) (2006). The trial court here denied the injunction on the additional ground that Xelk was not a printing or copy shop under the Declaration.

Generally, a landowner has the right to use his land for any lawful purpose, and any restrictions on the use of the land "must be clearly established and strictly construed." (Citation and punctuation omitted.) *Boehm v. Proctor*, 202 Ga. App. 869, 870 (415 SE2d 490) (1992). While no precise or technical language is required to create a covenant, the intention of the parties must be clearly expressed. *Taylor v. Smith*, 221 Ga. 55, 56 (3) (142 SE2d 918) (1965). In construing a restrictive covenant, courts look to the language of the entire document to determine whether the intention of the parties may be ascertained:

> Restrictive covenants will be construed to carry out the intention of the parties, if that intention can be ascertained from a consideration of the whole instrument. While any doubts as to the scope of restrictions will be construed in favor of the grantee, if the manifest intent of the parties can be ascertained from the covenants as a whole, *no ambiguity exists and the rules of strict construction need not be applied.*

(Citations and punctuation omitted.) *Boehm v. Proctor*, 202 Ga. App. at 870. Thus, if the Declaration is unambiguous the court must simply enforce the language according to its terms, and the rules of strict construction do not apply. But if the court determines that the language of the Declaration is ambiguous, any ambiguity in the language of the Declaration must be construed in favor of Stewart Holdings. Id.

The pertinent provision of the Declaration may be divided into two sections. The first section prohibits the property from being used for certain purposes (e.g., a manufacturing operation, industrial usage, the sale or display of pornographic materials, an adult entertainment facility). These prohibitions are without limitation. The second section prohibits the use of the shopping center for certain purposes, but only if WPW does not consent and only if a "similar use is already in existence or proposed as a use" for the shopping center.

Moreover, the phrase "printing or copying shop" is not defined, and we must look to the language of the Declaration as a whole to determine WPW's intent in including this prohibition. Westpark urges us to determine the meaning of the phrase "printing or copying shop" from reference to dictionary definitions of the key words, as we have done in other cases. See, e.g., *Vester v. Banks*, 257 Ga. App. 26, 27 (570 SE2d 586) (2002) (definition of "modular"); *Market Place*

*Shopping Center v. Basic Business Alternatives*, 213 Ga. App. 722, 722-723 (1) (445 SE2d 824) (1994) (definition of "deli"). But such an analysis will not suffice here because the phrase "printing or copying shop" must be considered in light of other applicable conditions. The Declaration prohibits a lease to a printing or copying shop only if an existing or proposed tenant makes a similar use of its space. Accordingly, we can conclude that WPW intended to protect its existing or prospective clients from direct competition, and the definition of the phrase "printing or copying shop," therefore, is dependent upon evidence of any similar use employed by other tenants in the shopping center.

Westpark failed, however, to establish the existence of a tenant with a similar use. Although Westpark alleged in its complaint that it had a tenant operating a printing and copying shop, the defendants did not admit this allegation in their responsive pleadings, and no other evidence exists in the record to support it.[1] Thus, Westpark failed to prove the existence of an existing or proposed tenant with a similar use. Further, while Westpark introduced by affidavit evidence of Xelk's marketing materials to show its intended business, it provided no evidence to explain the business of the tenant alleged to be engaged in a similar use. In addition, Westpark conceded at the motion hearing that some of Xelk's business did not violate the Declaration and that Xelk offered services that Westpark did not contend were "printing functions." In fact, Westpark's attorney stated on two occasions that he did not know exactly what Xelk's business was.

An injunction is a " 'harsh remedy,' "[2] and the movant must clearly establish the right to such relief. By failing to prove the existence of a tenant with a similar use or to explain the nature of that use, and by conceding that dissimilarities existed between Xelk's business and a printing and copying shop as defined in the Declaration, Westpark failed to establish that Xelk's business violated the Declaration.

Although Westpark contends that the trial judge erred in reaching his decision after stating that he believed there was "no need to present evidence in this case," the judge's order makes clear that he considered the evidence in the record in denying the motion. And the judge did not preclude the introduction of other evidence as he stated at the hearing that "he would be glad to listen to any evidence" presented, although he did not think it was necessary. In any event,

---

[1] Westpark identified the tenant in the motion hearing as Minuteman Press and identified it in its appellate brief as Impressive Printing and Graphic Design, Inc. d/b/a Minuteman Press, but no record citation supports this assertion.

[2] *Overton v. Alford*, 210 Ga. 780 (82 SE2d 836) (1954).

Westpark has made no proffer of any evidence that it contends the trial court prevented it from placing in the record.

Accordingly, we affirm the denial of Westpark's motion for interlocutory injunction on the ground that it failed to establish at this preliminary stage that Xelk's lease violated the Declaration and thus failed to show that Westpark was likely to prevail on the merits. *Toberman v. Larose Limited Partnership*, 281 Ga. App. at 779 (1).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 29, 2007.

*Kitchens, Kelley & Gaynes, Stephen V. Kern*, for appellant.
*Krevolin & Horst, Jeffrey D. Horst, W. Anthony Collins, Jr., Webb, Lindsey & Wade, Richard P. Lindsey, Jason B. Thompson*, for appellees.

