A11A2295. GRAVE DE PERALTA et al. v. BLACKBERRY MOUNTAIN ASSOCIATION, INC.

(726 SE2d 789)

BLACKWELL, Judge.

Ricardo and Tiffany Grave de Peralta own a home in the Blackberry Mountain neighborhood in Gilmer County, and they occasionally rent their home to others for a few days at a time. The Blackberry Mountain Association, Inc., an association of homeowners in the neighborhood, does not approve of rentals for a term so short,[1] and it sued the Grave de Peraltas, seeking a declaratory judgment that the neighborhood covenants prohibit such rentals, as well as injunctive relief. The Grave de Peraltas moved for summary judgment, arguing that the relevant provision of the covenants does not apply to them and, in any event, does not prohibit rentals, even for only a few days at a time. The court below denied that motion, and the Grave de Peraltas appeal.[2] We conclude that the covenants cannot reasonably be construed to prohibit the Grave de Peraltas from renting their home for a few days at a time, and for this reason, we reverse the judgment below.

---

[10] See *McEwen v. Bremen Bowdon Investment Co.*, 309 Ga. App. 170, 171 (2) (709 SE2d 908) (2011).

[1] The Association only objects to "short-term rentals," which it appears to define as a rental for a term of less than four months.

[2] The court below certified its denial of the motion for summary judgment for immediate review, and the Grave de Peraltas timely filed an application for interlocutory review, which we granted. See OCGA § 5-6-34 (b).

The Association and the Grave de Peraltas agree that Section 6.01 of the Blackberry Mountain covenants — specifically the fourth sentence of that section, which is italicized below — governs their dispute:

Section 6.01 — *Use of Parcels by Owners and Guests.*

Except for the transitory and restricted use by guests of Owners, as limited below or by the Association through the Blackberry Mountain Rules, the use of each Parcel, whether or not improved by a residence or other structure, and the use of any Common Area by the Owner or Owners of any Parcel, shall be limited to twelve (12) persons at a time regardless of the number of owners of record of the Parcel. Such twelve (12) persons shall include married or unmarried adults and all minor children of such family or families. Should fee title ownership be taken by legal entity or more than twelve (12) persons, at the time of the original sale or transfer thereof, the fee title owners shall designate in writing the persons, not to exceed twelve (12), who shall have the right to use the owned Parcel or any Common Area and who shall have any right to use any portion of the property as Owners. *The holder or holders of legal title shall designate in writing the names of persons entitled to use, whether by lease, agreement, or otherwise, the Parcel and Common Areas under this provision; and such designation shall not be changed more than three (3) times in any one calendar year without the express consent of the Association.*
Subject to Blackberry Mountain Rules from time to time in effect respecting the number of guests permitted for special occasions or by special permit of the Association and limitations on the use of Common Areas or facilities by guests, including denial of entrance or other privileges of guests who have abused or violated said Blackberry Mountain Rules, the maximum number of guests present on Blackberry Mountain at any one time by virtue of permission of all the Owners of any one Parcel shall not exceed twenty (20) persons; i.e., the total number of guests allowed on Blackberry Mountain at any one time or day shall not exceed twenty (20) persons for any one Parcel. The acts or omissions of any guests shall be deemed the acts or omissions of the Owner or Owners at whose invitation said guests are present to the end that such Owner shall be fully

responsible for any violation of the Blackberry Mountain Rules or of this Declaration or of law committed by such guest.

(Emphasis supplied.) The Association contends that, under the fourth sentence of Section 6.01, the Grave de Peraltas must designate all persons, including renters, entitled to use their home, and that designation cannot be changed more than three times each year without leave of the Association. Consequently, the Association reasons, the Grave de Peraltas cannot rent their home to others for a term of less than four months without its consent because, if they did, they would have to change their designation more frequently. The Grave de Peraltas contend, on the other hand, that the fourth sentence of Section 6.01 applies only to those parcels described in its third sentence — parcels owned by an entity or group of twelve or more persons — and in any event does not prohibit rentals for a few days at a time.

We begin with the settled principles that inform any interpretation of covenants restricting the use of land. Generally speaking, "[r]estrictive covenants will be construed to carry out the intention of the parties." *Westpark Walk Owners v. Stewart Holdings*, 288 Ga. App. 633, 636 (2) (655 SE2d 254) (2007). When a covenant is clear and unambiguous, it is attributed its plain meaning. See *Lake Arrowhead Property Owners Assn. v. Dalton*, 257 Ga. App. 655, 656 (572 SE2d 25) (2002). When the covenant is less clear, a court must attempt to ascertain its intent from an examination of the entire document in which the covenant is found. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Statham*, 243 Ga. 448, 449 (254 SE2d 833) (1979). "[I]f the manifest intent of the parties can be ascertained from the covenants as a whole, no ambiguity exists," and there is no need for judicial construction. *Westpark*, 288 Ga. App. at 636 (2). But if the intent of the parties cannot be discerned from the document as a whole, any ambiguity must be strictly construed in favor of the property owner, *Douglas v. Wages*, 271 Ga. 616, 617 (1) (523 SE2d 330) (1999), inasmuch as "restrictions on private property are generally not favored in Georgia," *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 427 (1) (532 SE2d 736) (2000), and generally speaking, an owner of land has the right to use it for "any lawful purpose." *Holbrook v. Davison*, 258 Ga. 844, 845 (1) (375 SE2d 840) (1989). Thus, "[r]estrictions upon an owner's use of land must be clearly established," id., and covenants restricting the use of real property may not be enlarged or extended by judicial construction. *Lake Arrowhead*, 257 Ga. App. at 656. See also *England v. Atkinson*, 196 Ga. 181, 184 (1) (26 SE2d 431) (1943) ("When it is sought to

restrict one in the use of his own private property for any lawful purpose, the ground for such interference must be clear and indubitable. The word indubitable in its literal sense means without doubt.") (citation and punctuation omitted); *King v. Baker*, 214 Ga. App. 229, 235 (5) (447 SE2d 129) (1994) ("A covenant plainly expressed cannot be broadened by parol proof of a covenantor.") (citation omitted).

The fourth sentence of Section 6.01 says nothing at all about rentals, and it certainly does not clearly and unambiguously prohibit any rentals. The question, then, is whether we can discern a manifest intention to prohibit such rentals from an examination of the covenants as a whole. We cannot. In the first place, it is not apparent to us that the fourth sentence is meant to apply to the Grave de Peraltas at all. By its own terms, the fourth sentence requires an owner to "designate in writing the names of persons entitled to use, by lease, agreement, or otherwise, the Parcel and Common Areas *under this provision*," (emphasis supplied), but it is unclear whether "under this provision" is intended to identify certain designations or the kind of persons that must be designated.[3] If it is meant to identify certain designations, then presumably it is speaking of the requirement to designate described in the third sentence, which is the only other requirement to designate specified in Section 6.01. And if that were the case, the fourth sentence would not apply to the Grave de Peraltas at all, inasmuch as the third sentence is expressly limited to parcels owned by an entity or group of twelve or more persons.[4]

On the other hand, if "under this provision" is meant to identify the kind of persons that must be designated, then the designation requirement would appear to apply to the Grave de Peraltas. But that would not help the Association in this case because, we think, short-term renters without an ownership interest are not among the persons who must be designated. As a whole, the first paragraph of Section 6.01 is concerned with the use of individual parcels, as well as the common areas of Blackberry Mountain, by owners.[5] Indeed, the

---

[3] In other words, it is unclear whether this sentence should be read as "designate in writing . . . under this provision" or "the names of persons entitled to use . . . under this provision."

[4] If the fourth sentence is limited to those parcels identified in the third sentence, then the third and fourth sentences are somewhat duplicative. If, on the other hand, the fourth sentence stands alone, its requirements largely would subsume those of the third sentence, rendering much of the third sentence surplusage. The usual rule that we will not interpret a contract in a way that renders one or more of its provisions meaningless, therefore, is simply not very helpful in this case. See *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000) (a construction that renders portions of the contract language meaningless should be avoided).

[5] Section 6.01 refers to "Owners," and Section 1.06 of the covenants defines "Owner" as "the record owner . . . of a fee simple title to any parcel."

first sentence of that paragraph speaks of "the use of each Parcel . . . and the use of any Common Area by the Owner or Owners of any Parcel," and the third sentence speaks of "the persons . . . who shall have the right to use the owned Parcel or any Common Area and who shall have any right to use any portion of the property as Owners." Accordingly, if the fourth sentence applies to the Grave de Peraltas at all, it can only be reasonably understood to require that they designate the persons entitled to use their property "as Owners."

This understanding of the fourth sentence is confirmed, we think, by the fact that an owner cannot designate more than twelve persons entitled to use the property under the third sentence, but no such limitation applies to a designation under the fourth sentence. If *any* person entitled to use a parcel, whether an owner or not, had to be designated, then the covenants would permit a parcel having a corporate owner or more than twelve individual owners to designate only twelve users, whereas a parcel owned by only one or two owners could designate three hundred users. That, almost certainly, is not what was intended by Section 6.01, and so the fourth sentence must be understood to refer only to a designation of persons entitled to use "as Owners." The Association does not contend that the persons to whom the Grave de Peraltas occasionally rent their home use the property "as Owners," and for that reason, we conclude that Section 6.01 cannot reasonably be construed to prohibit their rentals of their home. Accordingly, the Grave de Peraltas are entitled to summary judgment, and we reverse the decision below.

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*

DECIDED MARCH 29, 2012.

*Clifford S. Lancey*, for appellants.
*Swift, Currie, McGhee & Hiers, Maren R. Cave*, for appellee.