**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 13, 2019**

# In the Court of Appeals of Georgia

A19A0015.  PASHA  v.  BATTLE  CREEK  HOMEOWNERS
ASSOCIATION, INC.

DILLARD, Chief Judge.

Fard Pasha filed suit against the Battle Creek Homeowners Association, Inc. (the "Association"), seeking a declaratory judgment that an amendment to the Association's "Declaration"—which restricted the ability of the neighborhood's homeowners to lease their property—was unenforceable as to him. Both parties moved for summary judgment, and, subsequently, the trial court denied Pasha's motion but ruled in favor of the Association. On appeal, Pasha contends that the trial court erred in granting summary judgment to the Association, arguing that the amendment to the Declaration did not apply to his vested right to lease his property. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to Pasha (*i.e.*, the nonmoving party),[1] the record shows that the Battle Creek subdivision is a property owners' development, as defined under the Georgia Property Owners' Association Act (the "POA Act"),[2] with a governing homeowners' association. In 1999, the Association[3] filed a Declaration of Covenants, Conditions, Restrictions, and Easement for Battle Creek Subdivision with the Clerk of the Superior Court of Cobb County,[4] and, in 2000, it similarly filed an amended Declaration. And although the 2000 Declaration included

---

[1] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

[2] *See* OCGA § 44-3-220 *et seq.*; OCGA § 44-3-222 ("A property owners' development shall come into existence upon either the recordation of the declaration pursuant to this article or the amendment of a recorded declaration in accordance with Code Section 44-3-235. Any declaration or amendment intending to bring or avail a development of the benefits and provisions of this article shall state an affirmative election to be so governed. Any original declaration shall be duly executed by or on behalf of all of the owners of the submitted property. Any such amendment to an existing declaration shall be executed in accordance with the terms of the recorded declaration being amended thereby.").

[3] *See* OCGA § 44-3-221 (16) ("'Property owners' association' or 'association' means a corporation formed for the purpose of exercising the powers of the property owners' association created pursuant to this article.").

[4] *See* OCGA § 44-3-221 (6) ( "'Declaration' means the recordable instrument creating covenants upon property which covenants are administered by a property owners' association in which membership is mandatory for all owners of lots in the property owners' development.").

2

restrictive covenants, at that time, the Declaration did not restrict the leasing of homes.

Pasha purchased his home on Rifle Ridge in the Battle Creek subdivision in October 2000 and was aware of the Declaration when he made the purchase. In 2004, Pasha moved out of his home but retained it as an asset, and entered into a 300-month commercial lease agreement with a real-estate company he formed (for which he was the sole officer and member). And over the next decade, Pasha rented his home to a handful of different tenants.

In 2016, the Association proposed amending the Declaration. And although Pasha voted against the amendment, it passed by a formal vote with more than two-thirds of the homeowners in favor.[5] In contrast to the earlier version, the amended Declaration restricted leasing, specifically providing in Section 5 as follows:

> In order to preserve the character of Battle Creek as predominantly owner-occupied and thus protect the value of Lots within the Community, and ensure that Lots qualify for eligibility on the secondary

---

[5] *See* OCGA § 44-3-223 ("Every lot owner and all those entitled to occupy a lot shall comply with all lawful provisions of the property owners' association instrument. In addition, any lot owner and all those entitled to occupy a lot shall comply with any reasonable rules or regulations adopted by the association pursuant to the instrument which have been provided to the lot owners and with the lawful provisions of the bylaws of the association.").

mortgage market, the leasing of lots is prohibited, except as provided in this Section. Leasing of Lots is permitted only on a temporary basis within the following exceptions: (1) a Grandfathered Owner, (2) an Owner who has received a written Hardship Leasing Permit from the Board as provided in this Section; or (3) a Mortgagee who becomes the Owner of a Lot through foreclosure of a Mortgage or Deed in Lieu of Foreclosure of a Mortgage.

Under Section 5 (a) (ii), the Declaration defined "Grandfathered Owner" to mean

an Owner of a Lot who is lawfully leasing his or her Lot on the Effective Date, and who has provided the Board, within thirty (30) days of the Effective Date, with a copy of the lease in effect on the Effective Date. Any Owner leasing a Lot on the Effective Date who does not provide a copy of the lease shall be in violation of the Declaration.

This same subsection also provided:

A Grandfathered Owner shall only have the right to lease until the earlier of: (1) the date the Grandfathered Owner conveys title to the Grandfathered Lot to any other person (other than the Owner's Spouse); or (2) the date that all current occupants of the Grandfathered Owner's Lot vacate and cease to occupy the Lot. Further, any assignment, extension, renewal, or modification of any lease agreement in existence on the Effective Date, including, but not limited to, changes in the duration of the lease or the occupants, shall be considered a termination of the lease, and commencement of a new lease, which must comply with this Section.

4

Subsequent to the adoption of the amended Declaration, the Association informed Pasha that the new restrictions would take effect on August 1, 2016, and requested copies of any current leasing agreement. But rather than comply with this directive, on February 14, 2017, Pasha filed suit against the Association, specifically seeking a declaratory judgment that the amended Declaration's restriction upon the leasing of property was unenforceable as to him. The Association filed an answer, and discovery ensued. At the conclusion of the discovery period, both parties filed motions for summary judgment. And shortly thereafter, the trial court issued an order denying Pasha's motion and granting summary judgment in favor of the Association. This appeal follows.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] If summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that

---

[6] OCGA § 9-11-56 (c).

the requirements of OCGA § 9-11-56 (c) have been met.[7] And in conducting this *de novo* review, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[8] Bearing these guiding principles in mind, we turn now to Pasha's specific claims of error.

1. Pasha contends that the trial court erred in granting summary judgment to the Association, arguing first that the amendment to the Declaration did not apply to his vested right to lease his property. We disagree.

The declaration of a homeowner's association, including its restrictive covenants, "is considered a contract, and we therefore apply the normal rules of contract construction to determine the meaning of the terms therein."[9] And like contracts, restrictive covenants will "be construed to carry out the intention of the

---

[7] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[8] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

[9] *Marino v. Clary Lakes Homeowners Ass'n., Inc.*, 331 Ga. App. 204, 208 (1) (770 SE2d 289) (2015) (punctuation omitted); *accord Crabapple Lake Parc Cmty. Ass'n, Inc. v. Circeo*, 325 Ga. App. 101, 104-05 (1) (a) (751 SE2d 866) (2013).

parties."[10] Thus, when a covenant is clear and unambiguous, "it is attributed its plain meaning."[11] But when the covenant is less than clear, a court must "attempt to ascertain its intent from an examination of the entire document in which the covenant is found."[12] Suffice it to say, if the manifest intent of the parties, as reflected in the relevant text, can be ascertained from the covenants as a whole, "no ambiguity exists, and there is no need for judicial construction."[13] But if the intent of the parties cannot be discerned from the document as a whole, "any ambiguity must be strictly construed in favor of the property owner, inasmuch as restrictions on private property are generally not favored in Georgia, and generally speaking, an owner of land has the right to use it for any lawful purpose."[14] Consequently, restrictions upon an owner's

---

[10] *Westpark Walk Owners v. Stewart Holdings*, 288 Ga. App. 633, 636 (2) (655 SE2d 254) (2007) (punctuation omitted); *accord Grave de Peralta v. Blackberry Mountain Ass'n, Inc.*, 315 Ga. App. 315, 317 (726 SE2d 789) (2012).

[11] *Grave de Peralta*, 315 Ga. App. at 317.

[12] *Id.*

[13] *Id.* (punctuation omitted).

[14] *Id.* (citations and punctuation omitted).

7

use of land "must be clearly established, and covenants restricting the use of real property may not be enlarged or extended by judicial construction."[15]

Here, it is undisputed that Section 5 of the amended Declaration significantly restricts leasing. Indeed, the first paragraph of that section provides that "the leasing of lots is prohibited, except as provided in this Section." Pasha does not argue otherwise, but, rather, contends that because he leased his property prior to the amended Declaration, he maintained a vested right to do so regardless of the recently enacted prohibitive covenant. This contention is a nonstarter.

The Association affirmatively opted in to the POA Act in 1999, and it is undisputed that Pasha was aware that the Association was governed by that statute when he purchased his home in 2000. Indeed, under OCGA § 44-3-226 (a) of the Act, the Declaration could be amended if two-thirds of the homeowners approved of such an amendment.[16] And here, two-thirds of the Battle Creek homeowners voted to restrict leasing in the neighborhood. As a result, the amendment to the Declaration

---

[15] *Id.* (citations and punctuation omitted).

[16] *See* OCGA § 44-3-226 (a) ("Except to the extent expressly permitted or required by other provisions of this article, the instrument shall be amended only by the agreement of lot owners of lots to which two-thirds of the votes in the association pertain or such larger majority as the instrument may specify . . . .").

complied with OCGA § 44-3-226 (a), and Pasha no longer has an unfettered right to lease his property.[17]

2. Pasha further contends that the trial court erred in granting summary judgment in favor of the Association on the grounds that the amended Declaration restricting the leasing of his property did not violate OCGA § 44-6-43. Again, we disagree.

OCGA § 44-6-43 provides: "Conditions which are repugnant to the estate granted, which require impossible or illegal acts to be performed, or which in themselves are contrary to the policy of the law are void." And Georgia's appellate

---

[17] *Cf. Marino v. Clary Lakes Homeowners Ass'n, Inc.*, 322 Ga. App. 839, 847-48 (2) (747 SE2d 31) (2013) (holding that an amendment to an instrument imposing a new restrictive covenant required approval by at least two-thirds of the homeowners given that the homeowners association elected to be subject to the POA Act), *overruled in part on other grounds by S-D RIRA, LLC v. Outback Prop. Owners' Ass'n, Inc.*, 330 Ga. App. 442 (765 SE2d 498) (2014). In support of his argument that he has a vested right to lease his property, Pasha cites *Charter Club on the River Home Owners Ass'n v. Walker*, 301 Ga. App. 898 (689 SE2d 344) (2009), where we held that under OCGA § 44-5-60 (d) (4), a property owner who has not consented in writing to an amendment imposing a new, more restrictive covenant on his or her property is not required to follow the amendment, even if the amendment was properly enacted under the amendment provision of the homeowners association's declaration of protective covenants. *Id.* at 899-900. But unlike here, *Walker* did not involve a restrictive covenant contained in a declaration of covenants governed by the POA Act. *See id.* Consequently, that case does not support Pasha's contention.

9

courts have held that the most common conditions deemed void under this statute are those that constitute either an outright or *de facto* restraint on alienation of property.[18]

But here, the trial court merely held Pasha did not argue that the amended Declaration's restriction on leasing was repugnant or against public policy so as to violate OCGA § 44-6-43, and that it had no reason to find otherwise. Given these particular circumstances, the trial court did not err in so finding[19] or in granting summary judgment in favor of the Association on this basis.

---

[18] *See Bandy v. Henderson*, 284 Ga. 692, 695-96 (4) (670 SE2d 792) (2008) (holding a will that devised testator's real property to her husband but directed that husband not alienate the property without executor's consent gave husband a fee simple interest in testator's real property, and thus the attempt to restrict husband's right to alienate the property was void under OCGA § 44-6-43); *Statham v. Kelly*, 276 Ga. 877, 878 (584 SE2d 246) (2003) (ruling that, under OCGA § 44-6-43, a devise in fee with an inhibition against alienation is repugnant to the fee, and is therefore void); *Dyer v. Dyer*, 275 Ga. 339, 341-42 (1) (566 SE2d 665) (2002) (holding that because easement interest applied to entire tract of land and contained no limitation with regard to time, place, or manner, easement acted as an unreasonable restraint on alienation and was void under OCGA § 44-6-43).

[19] *See Hill v. Fontaine Condo. Ass'n, Inc.*, 255 Ga. 24, 25 (1), (2) (334 SE2d 690) (1985) (holding that a condominium association's restriction on occupancy to persons 16 years old or older was not so unreasonable as to be repugnant to the estate granted and, therefore, did not violate OCGA § 44-6-3); *Godley Park Homeowners Ass'n, Inc. v. Bowen*, 286 Ga. App. 21, 23-24 (d) (649 SE2d 308) (2007) (holding that restrictive covenant in homeowners' association documents that prohibited homeowner from erecting "For Sale" sign on her property was not unenforceable restraint on alienation and, thus, did not violate OCGA § 44-6-43).

10

For all these reasons, the trial court's grant of summary judgment in favor of the Association is affirmed.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*