**FIRST DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2023**

# In the Court of Appeals of Georgia

A23A0620. SALTER et al. v. ST. CHARLES HOMEOWNERS
ASSOCIATION, INC. et al.

DOYLE, Presiding Judge.

Mechell and James Salter sued St. Charles Homeowners Association, Inc. (the "Association"), and five named board members (collectively, the "Appellees"), seeking declaratory relief and damages after the Association levied fines for the Salters' above-ground pool at a home (the "Property") within the St. Charles subdivision. The Association brought counterclaims against the Salters for injunctive and declaratory relief, damages, and attorney fees. After the trial court granted summary judgment on all claims and counterclaims in favor of the Appellees, the Salters appealed.[1] For the reasons set forth infra, we affirm in part and reverse in part.

---

[1] The trial court found that James Salter lacked standing to bring his claims because he was not a title owner of the Property and thus was not a member of the

Viewed in the light most favorable to the non-movants in the parties' respective motions for summary judgment,[2] the record shows the following facts. In 2002, Joseph Hutchison filed the Declaration of Covenants, Conditions, and Restrictions for St. Charles (SC) (the "Declaration") with the Clerk of the Superior Court of Clarke County, and subjected the subdivision to the Georgia Property Owners' Association Act.[3] In 2012, Mechell Salter purchased a home within the St. Charles community and subject to the Declaration.

The Declaration provided for the creation of an Architectural Review Board ("ARB") to review applications for construction of any exterior structures or improvements. The Declaration further granted the Association the authority to enforce its terms, including the architectural standards, and granted the Association authority to fine owners for non-compliance.

---

Association. James Salter does not challenge the trial court's dismissal of his claims in the Salters' initial brief, and the reply brief purports to be filed only on behalf of Mechell Salter. We note, however, that James Salter has not filed a motion to withdraw his appeal. See Court of Appeals Rule 41 (g) (1).

[2] See *Crabapple Lake Parc Community Assn. v. Circeo*, 325 Ga. App. 101 (751 SE2d 866) (2013).

[3] See OCGA § 44-3-220 et seq.

2

After Hutchison turned over the Association to the property owners in 2014, the board drafted and approved bylaws. Under the bylaws, an ARB would be "assembled on an as-needed basis with members appointed by the Board."

In July 2020, the Salters constructed an above-ground, vinyl pool that did not conform with the Declaration. Upon noticing construction materials, Appellee David McCormick (the board President) sent an e-mail to Mechell Salter in July 2020, reminding her of the Declaration's requirements. The Salters finished constructing their pool and later requested a waiver of the policy. On October 1, 2020, the Association's attorney sent the Salters an official notice of noncompliance, advising that monthly fines of $75 (one fourth of the amount of annual dues) would begin to incur on November 1, 2020, until the lot was brought into compliance.

The Salters filed suit against the Appellees in February 2021, seeking declaratory and injunctive relief, damages, and attorney fees. The Association counterclaimed, and both the Salters and the Appellees filed motions for summary judgment.

Following a hearing, the trial court granted summary judgment in favor of the Appellees. The trial court concluded that the language of the Declaration was clear and unambiguous and that it gave the Board unfettered authority to enforce the terms

3

of the Declaration. Further, the Salters had made no effort to comply with the terms of the Declaration as it related to the construction of the pool, did not ask if an ARB existed prior to construction, knew the Declaration only allowed for below-ground pools, and made no effort to halt construction upon the Association's warning e-mail.

The trial court further concluded that the Board had provided the Salters with notice of their potential violation and potential to be fined on July 23, 2020, and continuously communicated with them until October 1, when the Board sent a formal notice and provided an additional 30 days to remedy the violation or explain why they were not in violation.

The trial court rejected the Salters' breach-of-fiduciary-duty claim, finding that the Board acted within its authority to impose fines for the Salters' clear violation and that there was no evidence that the decision was not in good faith or was arbitrary and capricious. The court found that, under the terms of the Declaration, the Association was entitled to impose and recover fines for the Salters' violations, as well as interest and late fees, and that it was not required to develop a schedule of fines for all potential violations. The Association was also entitled to a permanent injunction prohibiting the Salters' above-ground pool and requiring them to remove it.

4

The trial court thus rejected the Salters' request for declaratory judgment and found that the Association was entitled to remove the Salters' pool, including the adjacent decking and fencing that the Salters had constructed without obtaining written approval. The court found that the Appellees were entitled to recover their fees incurred in defending the Salters' claims and the Association's fees in bringing its counterclaims. The court rejected the Salters' request for attorney fees and punitive damages. This appeal followed.

In reviewing the Declaration, we apply the normal rules of contract construction, attributing its plain meaning when it is clear and unambiguous.[4] "But if the intent of the parties cannot be discerned from the document as a whole, any ambiguity must be strictly construed in favor of the property owner, inasmuch as restrictions on private property are generally not favored in Georgia, and generally speaking, an owner of land has the right to use it for any lawful purpose."[5]

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial

---

[4] See *Pasha v. Battle Creek Homeowners Assn., Inc.*, 350 Ga. App. 433, 436 (1) (829 SE2d 618) (2019).

[5] (Citation and punctuation omitted.) Id. at 437 (1).

of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant."[6] With these guiding principles in mind, we turn now to the Salters' claims of error.

1. The Salters argue that there were disputed issues of fact regarding whether the Appellees waived the Association's enforcement rights under the Declaration by granting the Salters permission to build the pool and failing to create an ARB.

"Waiver requires a showing that the homeowners' association received complaints about other similar violations and thus was on notice of them, yet did not act."[7]

The Appellants do not dispute that the pool did not comply with the Declaration and that they never submitted any plans or proposals to the Board before installing the pool. The only approval they contend they received was Hutchison's verbal approval almost six years earlier, after he turned the Association over to the homeowners.[8]

---

[6] (Citations omitted.) *Crabapple*, 325 Ga. App. at 101.

[7] *Glisson v. IRHA of Loganville, Inc.*, 289 Ga. App. 311, 314 (2) (656 SE2d 924) (2008).

[8] See *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351, 352 (604 SE2d 215) (2004) ("A developer of a subdivision who reserved the authority to waive

6

And, as the trial court found, the evidence shows that the Association took action the same month that it became aware of the violation. Specifically, Appellee McCormick sent an e-mail to Mechell Salter on July 23, 2020, reminding her that projects had to be submitted for approval beforehand and that pools were specifically covered by Article 8.4 (i) of the Declaration. After further correspondence, including the Board's offer to approve a variance if the Salters agreed to pay $1,200 per year and submit proof of an annual inspection, the Board sent a formal violation notice on October 1, 2020.

Although the Salters complained they were being treated unfairly, there is no evidence in the record of any other above-ground pools in the neighborhood or even of situations where neighbors had failed to seek approval before beginning other projects. Further, Article 8 of the Declaration (Architectural Restrictions and Standards) contained a non-waiver provision:[9] "Approval of proposals, plans, and specifications, or drawings for any work done or proposed, or in connection with any

restrictions in covenants running with the land no longer possesses that authority after divesting himself of his interest in the subdivision.") (citation and punctuation omitted).

[9] See *Ranwal Props., LLC v. John H. Harland Co.*, 285 Ga. App. 532, 535 (2) (646 SE2d 730) (2007) ("It is well settled that nonwaiver clauses such as this are enforceable in Georgia.").

7

other matter requiring approval, shall not be deemed to constitute a waiver of the right to withhold approval as to any similar proposals, plans and specifications, drawings, or other matters subsequently or additionally submitted for approval."

Although the Salters contend that the Board waived strict compliance with the Declaration by failing to appoint a wholly separate ARB, the trial court did not err in finding that, "had the Salters made even a minimal effort to comply with the Declaration's requirements, the Association could have assembled a separate ARB in the 30-day review period." Even in the absence of an ARB, under the clear terms of the Declaration, the board itself could impose sanctions for violations of the architectural standards. Based on the foregoing, the trial court did not err in finding that there was no genuine issue of material fact on the issue of waiver.

2. The Salters argue that the trial court erred in finding that the Board did not breach its fiduciary duties by failing to appoint an ARB and in failing to apply the Declaration in an evenhanded manner. In a related argument, the Salters contend that the trial court erred in finding that the Association was entitled to collect fines because there were no standards for imposing such fines in the Declaration.

"When reviewing a homeowners association's decisions, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable,

8

and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious."[10]

As discussed in Division 1, supra, the Salters do not dispute that the above-ground pool was in violation of the Declaration, and there is no evidence in the record that there was another above-ground pool in the neighborhood.[11] The Salters never inquired before beginning the pool project whether there was an ARB, and as the trial court found, the board had enforcement authority under the clear and unambiguous terms of the Declaration.[12]

There is also no genuine issue of material fact as to the Salters' argument that the exercise of the Board's authority was not procedurally fair and reasonable. In support of their argument, the Salters rely on *Abdullah v. Winslow at Eagle's Landing*

---

[10] (Citation and punctuation omitted.) *Wright v. Piedmont Property Owners Assn., Inc.*, 288 Ga. App. 261 (653 SE2d 846) (2007).

[11] See *King v. Chism*, 279 Ga. App. 712, 717 (3) (632 SE2d 463) (2006) (summary judgment proper as to whether condo association's enforcement of parking rule was arbitrary and capricious where property owner introduced no evidence that another unit owner had abandoned a vehicle with an expired tag in the common area for almost three years).

[12] See *Hall v. Town Creek Neighborhood Assn.*, 320 Ga. App. 897, 899 (740 SE2d 816) (2013) ("[I]f the language [of the Declaration of Covenants] at issue is clear and unambiguous, our job is simply to apply that language as written.").

*Homeowners Assn.*[13] In *Abdullah*, the homeowners' association assessed fines of $100 per week after a homeowner failed to seek prior approval of a flower bed on his property.[14] The declaration there provided that each owner agreed to pay "reasonable fines as may be imposed in accordance with the terms of [the declaration]."[15] This Court reversed the trial court's grant of summary judgment in favor of the association, holding that "based on the limited evidence in the record, . . . the association's practice of imposing a $100-per-week fine for [the homeowner's] failure to obtain pre-approval of his flower bed [was] not supported by the terms of the declaration nor in compliance with OCGA § 44-3-223."[16]

The Declaration here is distinguishable from that in *Abdullah*, which allowed the imposition of "reasonable" fines. In this case, Article 8.1 of the Declaration

---

[13] 349 Ga. App. 615 (823 SE2d 872) (2019).

[14] Id. at 615.

[15] (Punctuation omitted.) Id. at 618 (2).

[16] Id. at 620 (2); see OCGA § 44-3-223 ("[A]ny lot owner and all those entitled to occupy a lot shall comply with any reasonable rules or regulations adopted by the association pursuant to the instrument which have been provided to the lot owners and with the lawful provisions of the bylaws of the association. . . . If and *to the extent provided in the instrument*, the association shall be empowered to impose and assess fines[.]") (emphasis supplied).

prohibited the placement of any exterior structure "except in compliance with this Article, and with the prior written approval of the Declarant or the ARB." Subsection (a) of that provision gave the Declarant or his designated representative "sole and uncontrolled discretion" to refuse or approve plans based upon any grounds. While Article 8.2 gave responsibility for review of all applications for construction of any structures or modifications to the ARB, the Salters do not contend that they attempted to submit any plans and specifications of the pool project as required by Article 8.3. That provision gives an ARB 30 days to act on an application or it would be deemed approved.

Under Article 8.7, once the Declarant or ARB determined that a structure was nonconforming, the property owners "shall," at their own cost and expense, remove the structure and restore the property to its prior condition. Should they fail to do so, "the ARB shall have the right to enter the property, remove the violation, and restore the property[.]" "In addition, the Board may enforce the decisions of the ARB by any means of enforcement described in Section 4.3."

Under Article 4.3, after compliance with the notice and hearing procedures set forth in the By-Laws, the board could impose sanctions, "without limitation," for violations, including "monetary fines which shall constitute a lien upon the Lot of the

11

violator." The bylaws do not set forth specific procedures, but do make clear that one of the Board president's duties is to "[m]aintain and uphold the architectural standards as set forth in Article 8 of the [Declaration]."

In *Abdullah*, we remanded because the record was unclear whether the fines were "reasonable," as required by the declaration at issue in that case.[17] The Declaration here, when read as a whole, gave the board unfettered authority to enforce the architectural standards. Further, there is no evidence that the board was not acting in good faith when it imposed fines for a clear violation of the Declaration (allowing only gunite, below-ground pools) or that the board's actions were procedurally unfair.[18] Accordingly, the trial court did not err in declaring that the Association was entitled to recover the monetary fines imposed against the Salters.

3. The Salters argue that the trial court erred in finding them liable for attorney fees under OCGA § 13-6-11 because bad faith is a jury issue.

After finding that the Association was entitled to recover attorney fees under the Declaration, the trial court found that the Salters were also liable under OCGA §

---

[17] See *Abdullah*, 349 Ga. App. at 620 (2).

[18] See *Waller v. Golden*, 288 Ga. 595, 599 (2) (706 SE2d 403) (2011); see also OCGA § 14-3-830 (c) (presumption of good faith).

12

13-6-11 for the Appellees' attorney fees incurred in defending the Salters' claims and for the Association's attorney fees in bringing its counterclaims because the Salters had acted with bad faith.

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

Attorney fees cannot be awarded by a trial court pursuant to OCGA § 13-6-11 at the summary-judgment stage of proceedings because the very language of the statute — the jury may allow them — "prevents a trial court from ever determining that a claimant is entitled to attorney fees as a matter of law."[19] This applies to a determination of both liability and damages.[20] Accordingly, the trial court here was without authority to grant attorney fees pursuant to OCGA § 13-6-11 on summary

---

[19] *Covington Square Assocs., LLC v. Ingles Markets*, 287 Ga. 445 (696 SE2d 649) (2010).

[20] See id. at 446.

13

judgment.[21] We therefore reverse to the extent that the trial court found that the Appellees were entitled to attorney fees under OCGA § 13-6-11.[22]

4. Based on our holding in Divisions 1 and 2, supra, we need not address the Salters' remaining claims of error.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Land, J. concur.*

---

[21] See *Crouch v. Bent Tree Community, Inc.*, 310 Ga. App. 319, 323 (6) (713 SE2d 402) (2011).

[22] The Salters do not challenge the trial court's finding that the Association was also entitled under the terms of the Declaration to its costs and reasonable attorney fees incurred in enforcing the Declaration.