## A01A2486. FOCUS ENTERTAINMENT INTERNATIONAL, INC. et al. v. PARTRIDGE GREENE, INC.

(558 SE2d 440)

ELDRIDGE, Judge.

Focus Entertainment International, Inc., M&S Zbosnik, Inc., Paul Fuller, Eric Clabaugh, and Peachtree Visuals, LLC d/b/a Inserection appeal from the grant of an interlocutory injunction granted to Partridge Greene, Inc., grantor of an outparcel at Gwinnett Place Mall, to enforce a recorded restrictive covenant in the warranty deed prohibiting the sale or display of pornographic materials; operation of any pornographic business, including massage parlors; adult theaters displaying pornographic pictures or films; and adult bookstores dealing in pornographic materials. The Supreme Court of Georgia in its transfer order stated that this case did not implicate freedom of speech under either the state or federal constitutions but involved the construction of a contract restrictive covenant and transferred this case back to this Court for determination. The grant or denial of an interlocutory injunction based on issues of fact rests in the sound discretion of the trial court; therefore, the trial court is affirmed.

On June 24, 1986, PGI and Martin and Sheila Zbosnik entered into a specific restrictive covenant as part of the recorded general warranty deed regarding the purchase of 3522 Satellite Boulevard, Duluth, Gwinnett County. Such restrictive covenant was part of the common scheme used in the development of Gwinnett Place Mall and all surrounding outparcels to protect the property retained by PGI and other owners of property conveyed by it and leaseholders from PGI. The restrictive covenant stated that the property was prohibited from being "used for the sale or display of pornographic material nor for the operation of any pornographic business including massage parlors, adult theatres displaying pornographic pictures or films, adult book stores dealing in pornographic materials," and it empowered PGI to enforce the covenants through an action in law or equity to restrain or enjoin such violation. For fifteen years, the Zbos-

niks operated a business on two floor levels of the store, Home Video. PGI was never aware that any pornographic materials were either sold or displayed on the premises on the lower level.

In April 2001, the Zbosniks sold Home Video° and M&S Zbosnik, Inc. to Inserection but retained the title to the property, which they leased to Inserection. In mid-May 2001, PGI learned through advertisement and other information from Inserection that Inserection intended to operate a pornographic business on the property, which would adversely affect all the development in violation of the restrictive covenant. On May 17, 2001, PGI delivered to Inserection a copy of the restrictive covenant and told it that the sale or display of pornographic materials on the property would be treated as a violation of the restrictive covenants. Despite the warning notice, one week later Inserection was operating a business involving the sale and display of pornography on the premises in violation of the restrictive covenant. On May 24, 2001, PGI gave written notice to the Zbosniks that legal action would follow to enforce the restrictive covenant. On June 8, 2001, PGI instituted this action to enforce the restrictive covenant. On June 8, 2001, a rule nisi issued for an interlocutory injunction evidentiary hearing to be held on June 15, 2001. On June 9, 2001, United Parcel Service delivered to Inserection a copy of the complaint, petition, motion, and rule nisi from PGI, and on June 8, 2001, PGI's counsel talked to Inserection's counsel informing him of the hearing and its purpose. At the hearing, counsel for Inserection admitted in judicio that it had seven days actual notice of the interlocutory injunction evidentiary hearing.

The Zbosniks understood the meaning of the restrictive covenant as to pornography when they entered into the covenant prohibiting the sale or display of pornography on the property. Unrated adult videos generally in the business were understood to be pornographic by the Zbosniks. Mrs. Zbosnik admitted that they sold pornography on the premises, and that it was of such an explicit nature to arouse sexual desires that she isolated it on the property and that the trial exhibits purchased on the property were in the Zbosniks' understanding of what was pornographic at the time of purchase of the property. Thomas Wheeler, PGI Vice-President, executed the deed with the Zbosniks and testified what PGI considered pornographic at the time of sale of the property. At the hearing, he identified materials purchased on the property from Inserection as being pornographic within such prohibited restriction. Investigator Thomas Bartik, Gwinnett County Police Department, testified that the materials introduced at the hearing and identified by Wheeler had been for sale on display at the property and had been purchased and not seized. Such materials depicted on the box and/or in the films explicit sexual activity, i.e., lesbian cunnilingus, female masturbation with

vaginal dildo insertion, anal intercourse, simultaneous anal and vaginal intercourse, fellatio, vaginal intercourse, sadomasochism, bondage, and sex toys.

1. Inserection asserts that the trial court erred in converting a temporary restraining order into an interlocutory injunction hearing. We do not agree.

On June 8, 2001, PGI sought an ex parte TRO from the trial court; however, the trial court denied the TRO and instead issued a rule nisi which stated,

> [a] motion for Interlocutory Injunction having been filed by Plaintiff Partridge Greene, Inc. on June _, 2001, IT IS HEREBY ORDERED that all interested parties show cause before this Court on the 15th of June, 2001, at 2:00 o'clock p.m. why the prayers of the aforesaid Motion should not be granted, IT IS SO ORDERED this 8th day of June, 2001.

Thus, Inserection had actual notice that an interlocutory injunction hearing had been ordered by the trial court prior to the hearing date. The notice of hearing, pursuant to the rule nisi order, was for an interlocutory injunction and not a TRO. The denied TRO was not converted to an interlocutory injunction; however, the trial court gave notice that an evidentiary hearing to deal with an interlocutory injunction would be held. Thus, Inserection had seven days actual notice of the date, time, and purpose of the evidentiary hearing, seeking an interlocutory injunction, as it admitted in open court.

Uniform Superior Court Rule 6.2 provides that a respondent normally has 30 days within which to respond to a motion; however, the rule allows the trial court in its sound discretion to shorten this time by written order, issued as a rule nisi. A motion for interlocutory injunction or a TRO is an extraordinary motion, which is time sensitive, unlike other motions, because it seeks to preserve the status quo until a full hearing can be held to avoid irreparable harm. If a TRO is granted ex parte, then a hearing for interlocutory injunction must be held within 30 days or the TRO is dissolved as a matter of law. OCGA § 9-11-65 (b). There is nothing in either the Civil Practice Act or the USCR that prohibits a trial judge from setting an interlocutory injunction hearing in less than 30 days, because such motion is an extraordinary emergency procedure in law or in equity to protect rights from harm in an emergency created by the respondent. As a rule, interlocutory injunction hearings occur in less than 30 days where a TRO was denied to seek protection of the petitioner at the earliest opportunity, as in this case, and an interlocutory injunction hearing must occur within 30 days if a TRO was granted to maintain the injunction from being automatically dissolved in other cases.

Therefore, in most cases, unless the parties agree, an interlocutory hearing occurs in less than 30 days from filing, and the respondent has a limited time to prepare for the hearing. Whatever such time is, such time is greater than the time for a respondent to prepare for a TRO.

In fact, the trial court can convert an interlocutory injunction hearing by consolidating it into a final trial on the merits where notice has been given of such intent and where urgency demands an immediate action. OCGA § 9-11-65 (a) (2); *Kim v. State of Ga.*, 272 Ga. 343, 344 (528 SE2d 798) (2000) (with notice can consolidate interlocutory injunction with trial on the merits); *Kirk v. Hasty*, 239 Ga. 362, 365 (6) (236 SE2d 667) (1977) (statute authorizes but does not require consolidation of an interlocutory hearing with trial on the merits). Where the trial judge at the interlocutory hearing proceeds to consider the case on the merits and thereby consolidates the issues without objection from the parties, the parties waive any objection to such consolidation into a final hearing on the merits. *Wilkerson v. Chattahoochee Parks*, 244 Ga. 472, 473 (2) (260 SE2d 867) (1979). However, a consolidation of the interlocutory hearing into a final hearing cannot be done by the trial court without a written order over objection from the parties that they are not ready to proceed on the merits of the case. *Brevard Fed. Sav. &c. Assn. v. Ford Mountain Investments*, 261 Ga. 619, 620 (1) (409 SE2d 36) (1991) (issues for jury determination on the underlying contract dispute); *Fontaine Condo. Assn. v. Schnacke*, 230 Ga. App. 469, 470 (1) (496 SE2d 553) (1998) (TRO consolidated into final hearing on the merits over objection). This case was not a consolidated hearing on the merits but was an interlocutory injunction hearing pursuant to a rule nisi order so that such cases do not apply and the parties are entitled to a jury trial on the underlying restrictive covenant case.

While service of the complaint on Inserection occurred only one day prior to the hearing, Inserection had actual notice of the hearing, the complaint, and the issues for seven days by UPS delivery, which its counsel admitted in open court; service of process is not necessary for either a TRO or interlocutory injunction hearing, only notice. OCGA § 9-11-65 (b). Injunctive relief is intended to be swift, because the issues raised deal with urgency over threatened irreparable harm. To offset the shortness in preparation time, the law makes the grant of an interlocutory injunction difficult and requires the trial judge to balance the harm to the parties by balancing the equities. *Garden Hills Civic Assn. v. MARTA*, 273 Ga. 280, 281-282 (1) (539 SE2d 811) (2000). Further, a subsequent motion to clarify, modify, or vacate may be made to relieve a vague or abusive order, or an accelerated trial on the merits can be had. Thus, this enumeration lacks merit.

2. Inserection asserts that the trial court erred in not holding a hearing to first determine obscenity and without reviewing all the material in full in violation of Art. I, Sec. I, Par. IV of the Georgia Constitution and *Miller v. California*, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973), prior to issuing an injunction prohibiting the sale of adult material as pornographic. We do not agree.

This is not a case of state action involving criminal law, which impacts on state or federal rights of speech or which involves the seizure of obscene material by the State. Instead, this case involves private contract right enforcement as set forth in restrictive covenants, which run with the land. In the transfer order rendered by the Supreme Court of Georgia, it stated, "[i]t appearing that this case does not involve constitutional issues of free speech, but does involve the construction of a restrictive covenant, and it further appearing that any equitable relief sought is ancillary to the legal issues, this case is hereby returned to the Court of Appeals." (Citations omitted.) *M&S Zbosnik, Inc. v. Partridge Greene, Inc.*, Case No. S01M1521 (motion for reconsideration denied August 10, 2001). Since the Supreme Court of Georgia deems this case to involve only a matter of restrictive covenant interpretation, we find such portion of the enumeration of error without merit that raises constitutional issues.

*Miller v. California*, supra, involved the standard for determination of obscenity for criminal prosecution and seizure as contraband, which required a predetermination that material was obscene prior to seizure or criminal prosecution. In contrast, this case involves competent parties to a contract freely and knowingly entering into a restrictive covenant in which the grantees in consideration for the conveyance of property waived and surrendered whatever constitutional or other rights that they may have had to sell or display pornography or adult materials on the property and agreed that any violation was enforceable by a civil action in law or equity by injunction. Therefore, the body of law surrounding prosecution for obscenity is inapplicable.[1] Thus, this enumeration lacks merit.

---

[1] Inserection relies upon *Penthouse Intl. v. McAuliffe*, 436 FSupp. 1241 (N.D. Ga. 1977), aff'd in part and rev'd in part, 610 F2d 1353 (5th Cir. Ga. 1980), a declaratory judgment action based upon First and Fourteenth Amendment rights of speech regarding criminal prosecution under the Georgia obscenity statute and requiring a judicial determination of obscenity prior to issuing an arrest warrant to avoid unconstitutional prior restraint; and on *Gable v. Jenkins*, 309 FSupp. 998 (N.D. Ga. 1969), dealing with criminal prosecution for obscenity and requiring a prior adversary judicial determination of obscenity prior to seizure as contraband. Neither case is applicable under the facts of this case where private parties seek to enforce contract rights and where the grantees knowingly and willingly waived and surrendered any constitutional or property rights to sell or display pornography on the property in the future in return for the coveyance of a valuable commercial business location adjacent to Gwinnett Place Mall. Thus, as a restrictive covenant enforcement action only, Georgia civil law is applicable.

3. Inserection contends that the trial court committed error by issuing an injunction attempting to enforce a vague restrictive term and prohibited a much greater range of activity than is encompassed by the term "pornographic." We do not agree.

For purposes of this restrictive covenant, all obscenity is pornography, but not all pornography is obscenity. Obscenity and pornography are not the same thing, although both deal with materials intended to cause sexual arousal in the viewer. Each has different standards. Therefore, the parties to the restrictive covenant in the warranty deed, i.e., Martin and Sheila Zbosnik as grantees and PGI as grantor, had the intent to give a broader meaning to "pornography" than used in the criminal law for "obscenity." The parties intended to prohibit any sexual materials that were intended to arouse both normal sexual desires and prurient sexual desires by the use of the term pornography. Therefore, pornography for purposes of this restrictive covenant encompasses all things "obscene" as well as materials of a sexual nature that are intended to provoke only normal, healthy sexual desires,[2] i.e., sex toys; depiction of genitalia or of an anus; anal, oral, or vaginal intercourse, whether actual or simulated as a heterosexual or homosexual act; or masturbation, whether heterosexual, homosexual, or autoerotic.

The parties to this restrictive covenant intended to include any "adult material" and any "adult entertainment" within the meaning of pornographic. The grantor and grantees all agreed that materials in evidence presented to the trial court came within their common understanding of "pornographic" at the time that the restrictive covenant was executed. Thus, the parties understood the meaning of pornography prior to entering into the restrictive covenant.

> Pornography derives from the Greek (porne, harlot, and graphos, writing). The word now means 1: a description of prostitutes or prostitution 2: a depiction . . . designed to cause a sexual excitement. Webster's Third New International Dictionary [(unabridged 1969)]. Pornographic material which is obscene forms a sub-group of all "obscene" expression, but not the whole, at least as the word "obscene" is now used in our language. We note, therefore, that the words "obscene material," as used in this case, have a specific judicial meaning which derives from the *Roth* case, i.e.,

---

[2] *Brockett v. Spokane Arcades*, 472 U. S. 491 (105 SC 2794, 86 LE2d 394) (1985), held that materials which aroused a normal sexual response or desire were not obscene. However, for purposes of this restrictive covenant, pornography and obscenity are not the same thing. As a matter of contract right, the parties to the restrictive covenant were free to agree to prohibit from the property what was not obscene but merely pornographic, i.e., explicit adult sexual material that was intended to arouse a healthy sexual response or desire. Id.

obscene material "which deals with sex." *Roth* [*v. United States*, 354 U. S. 476, 494 (77 SC 1304, 1 LE2d 1498) (1957)]. See also ALI Model Penal Code § 251.4 (1) "Obscene Defined." (Official Draft 1962).

*Miller v. California*, supra at 20 (I), n. 2. Thus, pornography has a historic and clear meaning, i.e., any depiction that was intended or designed to arouse sexual desire. Therefore, pornographic was clearly meant by the parties as used in the restrictive covenant to include all materials that were intended to arouse a sexual desire or excitement whether considered normal or prurient. As such, the term "pornographic" was plain, clear, and certain.

4. Inserection contends that the trial court abused its discretion in not finding irreparable harm to PGI. We do not agree for several reasons, which reasons equally require affirmance.

(a) Land, under Geogia law, is deemed sufficiently unique that it is entitled to equitable remedies to protect such interest in land. *Rife v. Corbett*, 264 Ga. 871 (455 SE2d 581) (1995) (injunction to protect an easement); *Benton v. Patel*, 257 Ga. 669, 672 (1) (362 SE2d 217) (1987) (injunction to stop foreclosure); *Black v. American Vending Co.*, 239 Ga. 632, 634 (2) (238 SE2d 420) (1977) ("the law regards as sufficiently unique that equity will enforce a contract for [land] sale or lease"); *Clark v. Cagle*, 141 Ga. 703, 705-706 (1) (82 SE 21) (1914) (specific performance of contract to sell land). Therefore, when an interest in land is threatened with harm, equitable injunctive relief is appropriate, because such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed. See generally *Central of Ga. R. Co. v. Americus Constr. Co.*, 133 Ga. 392, 398 (65 SE 855) (1909) (irreparable injury defined to enjoin a nuisance); see also *Roth v. Connor*, 235 Ga. App. 866, 868-869 (1) (510 SE2d 550) (1998) (property interests of grantor and others in restrictive covenants for their benefit).

Where a grantor creates a restrictive covenant as a burden that runs with the land and conveys away such property while retaining other property, such restrictive covenants protect the grantor, PGI, and any other property owners who took from the grantor property affected by the restrictive covenants. *Roth v. Connor*, supra at 868-869. Thus, the violation of a restrictive covenant that is part of the development scheme affects the grantor and all other grantees, causing irreparable harm to the value of their respective property interests, because such restrictive covenant was part of the valuable contract consideration given and relied upon in the conveyance of land. Id. Thus, irreparable harm automatically occurs as a matter of law arising from a violation of a covenant running with the land, the rela-

tionship of the parties as grantor-grantee, and the consideration of the conveyance of less than a fee simple absolute for the burden imposed upon the land in the form of a restrictive covenant to protect the grantor and others who may wish to purchase the remaining land in the future. *Smith v. Pindar Real Estate Co.*, 187 Ga. 229, 235 (1) (200 SE 131) (1938) (restrictive covenant violation does not require proof of damages for enforcement). Thus, no special showing of irreparable harm is necessary other than the violation of a valid restrictive covenant.

> Equity will interpose by injunction to prevent the breach of negative covenants annexed to deeds or leases. . . . The reason is that the owner of land, selling or leasing it, may insist upon just such covenants as he pleases, touching the use and mode of enjoyment of the land. He has a right to define the injury for himself, and the party contracting with him must abide by the definition.

(Citation and punctuation omitted.) Id.

(b) The trial court may issue an interlocutory injunction to maintain the status quo until there is a final hearing on the merits if, "by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. Thus, a demonstration of irreparable injury is not an absolute prerequisite to interlocutory injunctive relief." (Citations and punctuation omitted.) *Parker v. Clary Lakes Recreation Assn.*, 272 Ga. 44, 45 (526 SE2d 838) (2000) (enjoin the change in bylaws of a civic association); see also *Jackson v. Delk*, 257 Ga. 541, 543-544 (4) (361 SE2d 370) (1987) (violation of zoning ordinance).

(c) The Supreme Court has ordered in this case that "any equitable relief sought is merely ancillary to the legal issues." "Thus, the transfer of the interlocutory application in this case to the Court of Appeals pursuant to *Pittman* [*v. Harbin Clinic Professional Assn.*, 263 Ga. 66 (428 SE2d 328) (1993),] was simply a binding determination that it is not an 'equity' case within [the Supreme Court's] general appellate jurisdiction, even though it clearly does involve the grant of equitable relief in the form of an injunction." *Saxton v. Coastal Dialysis &c.*, 267 Ga. 177, 179 (476 SE2d 587) (1996). Therefore, this case is a law case rather than an equity case with ancillary equitable relief. *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 747 (2) (524 SE2d 464) (1999); accord *Pittman v. Harbin Clinic Professional Assn.*, supra; *Beauchamp v. Knight*, 261 Ga. 608 (409 SE2d 208) (1991).

An interlocutory injunction is a proper legal remedy to enforce a restrictive covenant until there can be a final adjudication on the

merits as to the validity, construction, and violation of a restrictive covenant. *Chambers v. Gallaher*, 257 Ga. 795, 796 (364 SE2d 576) (1988); *Corp. &c. of Latter-Day Saints v. Statham*, 243 Ga. 448, 449 (254 SE2d 833) (1979). "[A]n injunction will lie in restrictive covenant cases even where damages are also sought." *Saxton v. Coastal Dialysis &c.*, 220 Ga. App. 805, 809 (3) (470 SE2d 252) (1996), rev'd on other grounds, 267 Ga. 177, supra; see also *Nat. Settlement Assoc. &c. v. Creel*, 256 Ga. 329, 332 (4) (349 SE2d 177) (1986). In this case, the restrictive covenant granted PGI the legal right to enforce the restrictive covenant at law or equity by injunction; therefore, the parties are bound by the form of relief that they agreed to employ to protect such right, i.e., injunction. *Law v. Lowe*, 191 Ga. App. 434, 435 (3) (382 SE2d 118) (1989). Therefore, having agreed to the method by which the restrictive covenant would be enforced when violated, the grantees and their successors in title have waived the necessity of proving any independent irreparable harm to the grantor other than the violation of the restrictive covenant by the grantees or their successors in title.

The trial judge has broad discretion in granting or continuing an injunction, which an appellate court will not disturb, absent a manifest abuse of discretion. *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 456 (1) (a) (369 SE2d 736) (1988) (enjoin collection of a judgment); *Sea Island Bank v. First Bulloch Bank &c. Co.*, 245 Ga. 715, 716 (1) (267 SE2d 12) (1980) (enforcement by injunction of a restrictive covenant). The record does not indicate that there exists an abuse of discretion by the trial court.

*Judgment affirmed. Miller, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED DECEMBER 19, 2001.

*Begner & Begner, Alan I. Begner, Cory G. Begner, Perrotta & Associates, Michael A. Prieto*, for appellants.

*Alston & Bird, T. Michael Tennant, Elizabeth Bertschi, Daniel N. Esrey*, for appellee.