**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 6, 2026**

# In the Court of Appeals of Georgia

A26A0227. COTTON, et al v. VININGS ESTATES COMMUNITY ASSOCIATION, INC.

DILLARD, Presiding Judge.

Earl and Deidre Cotton appeal a jury verdict in favor of Vining Estates Community Association, Inc.—their homeowners association[1]—in its action against them for damages concerning alleged violations of its declaration of protective covenants. The Cottons also challenge the trial court's post-trial grant of permanent injunctive relief to the HOA. The litigation arose from the Cottons' construction of an outdoor kitchen and pool pavilion that was noncompliant with the HOA's design guidelines (without prior approval). Following trial, the jury awarded the HOA $6,475

---

[1] For the sake of clarity, we refer to Vining Estates Community Association, Inc. as the "HOA" throughout the opinion.

for unpaid fines and $73,000 for attorney fees and costs. The trial court also granted the HOA's request for injunctive relief, ordering the Cottons to remove the entire outdoor structure and restore the area to its original condition.

More precisely, the Cottons argue the trial court erred in (1) denying their pretrial motion for summary judgment because the rules enforced against them were "unlawful greater restrictions"; (2) denying their motion for a directed verdict under "the *Saunders* standard";[2] (3) excluding evidence about similar structures in their neighborhood and testimony of their neighbors; (4) failing to charge the jury on greater restrictions, the *Saunders* standard, and the standard of compliance with the covenant procedures; (5) ordering an injunction after the verdict was rendered and the jury dispersed; and (6) failing to "balance the harms" between the parties when issuing the injunction. For the following reasons, we affirm.

Viewing the evidence in the light most favorable to the jury's verdict,[3] the record shows that the Cottons reside at 779 Vinings Estates Drive in Mableton,

---

[2] See *Saunders v. Thorn Woode P'hip L.P.*, 265 Ga. 703 (462 SE2d 135) (1995).

[3] See *Ga. Trails & Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 208 (855 SE2d 103) (2021) ("On appeal from a jury verdict, we affirm if any evidence supports the jury's verdict, construing the evidence in the light most favorable to the prevailing party." (quotation marks omitted)).

Georgia, which is located within the Vinings Estates subdivision. As owners of their home, the Cottons are members of the subdivision's HOA and they are subject to the terms, conditions, and requirements of its Declaration of Protective Covenants for Vinings Estates, as well as the HOA's bylaws. The HOA elects a Board of Directors and an Architectural Review Committee, which reviews proposed architectural modifications to individual lots in the subdivision.[4]

Relevant here, under Article VI, Section 10 of the Decaration,

[n]o exterior construction, addition, erection, or alteration shall be made unless and until the plans and specifications showing the nature, kind, shape, height, materials, and location shall have been submitted in writing to and approved by the Board or its designee. The Board or its designee *may promulgate written guidelines for exercise of this review*.

The Board or its designee shall be the sole arbiter of such plans and may withhold approval for *any reason*, including purely aesthetic considerations, and it shall be *entitled to stop any construction* in violations of these restrictions … . If the Board or its designee fails to approve or to disapprove such design and location within sixty (60) days after the plans

---

[4] For the sake of clarity, we refer to the Declaration of Protective Covenants for Vinings Estates as the "Declaration," the Board of Directors as the "Board," and the Architectural Review Committee as the "ARC."

and specifications have been submitted to it, the foregoing shall be deemed approved.[5]

Moreover, Article VI, Section 24 of the Declaration provides: "No detached structure shall be placed, erected, allowed, or maintained upon any Lot without *prior written consent* from the Board or its designee" and that "[a]ll detached structures must be consistent in design materials and color with the dwelling on the Lot."[6]

So, under the Declaration, a homeowner is required to submit a written request for modification to the Board for approval to build a structure of any kind that will be detached from their home. And in signing such a request, the homeowner must affirm that he or she "understand[s] and agree[s] that no work on [the] request shall commence until approval by the ARC or the Board … has been communicated" to the homeowner.

On September 23, 2021, the Cottons submitted a "Request for Modification Review" to the Board,[7] seeking permission to build an outdoor kitchen and pool

---

[5] (Emphasis added).

[6] (Emphasis added).

[7] While the request for modification listed Deirdre as the only homeowner, both Deirdre and Earl were defendants below, and it appears undisputed that they owned

pavilion; and in doing so, they provided architectural plans and other information about the proposed structure. The modification request proposed a "freestanding outdoor kitchen/pool pavilion approximately 594 square feet, 19.5 feet in height, with an enclosed bathroom and storage space, a covered outdoor kitchen, and utilities[,] including water and electrical power serving the building." And in signing the request, the Cottons confirmed their understanding that no construction on the pool pavilion would begin until and unless the Board or ARC approved their request.

The Cottons' modification request was governed by certain design guidelines adopted by the Board. More precisely, for properties less than one acre,[8] these design guidelines provided as follows:

> The following structures are permitted, with prior ARC approval, as long as the following requirements are met:
>
> A. The structure is less than 120 square feet and does not exceed 12' in height.
>
> B. The structure is located in the rear yard and within the extended sidelines of the home.

---

the home at issue together. In any event, whether Earl was named on the modification request is immaterial to the resolution of this appeal.

[8] It is undisputed that the Cottons' property was less than one acre.

C. Is not located in any easement or building setback.

D. The materials and finishes are compatible with the exterior of the home.

E. No utilities are permitted.

F. The structure is not to be used for any purpose that may be deemed by the ARC to cause disorderly, unsightly[,] or unkept conditions.

Ultimately, the ARC denied the Cottons' request for modification to build their pool pavilion, finding the proposed structure was out of compliance with the design guidelines. Specifically, the HOA informed the Cottons that the proposed structure was noncompliant because (1) it was well over the 120 square feet allowed for lots less than one acre; (2) it was over the 12 feet in height allowed for such lots; (3) per the site plan, the structure was outside the extended sidelines behind the house, which would most likely make it visible from the road; and (4) installation of utilities in freestanding structures is not allowed. Put simply, the proposed pool pavilion was too large, too tall, not located within the required area, and impermissibly equipped with utilities.

The HOA informed the Cottons that they could submit an amended application or appeal the decision to the ARC committee. And indeed, the Cottons appealed to the HOA's Board, submitting a revised request and requesting a variance from the

requirements. The HOA's Board denied the appeal, as the amended request made no alterations to the dimensions or location of the structure, and it still included the installation of utilities. The Cottons responded to the HOA, explaining that the height of the structure would be reduced to a maximum of 15 feet (still above the 12' limit), but they did not propose any other changes. Under these circumstances, the HOA's Board denied the Cottons' modified proposal because, among other things, "there weren't changes made to the size of the structure." Later on, the Cottons submitted a "variation request," but before the Board could rule on it, Board members learned the Cottons had already started building the proposed structure.

Upon learning that the Cottons started construction on the prohibited project, James Funk—the president of the HOA—went to the to their residence and told Earl to stop construction or they would start incurring fines. Funk also cautioned Earl that if he continued building the pool pavilion, he might have to tear it down. According to Erica Coles (the property manager for Vining Estates at the time), she informed Earl that the ARC was still reviewing his request for a variance; and in the meantime, he needed to stop building the pavilion. Earl responded that he was "on the right side

of this[,]" and he was "going to keep building." Even so, Coles "pleaded" with Earl to cease construction—but to no avail.

On cross-examination, the Cottons admitted that they were already under contract to build the pool pavilion and purchased materials to do so before submitting their modification request. Deidre also testified that they started building before the ARC reached a decision on that request. On February 28, 2022, the Board sent a letter to the Cottons demanding that they immediately stop building the pavilion and remove the structure. The Board also fined the Cottons $1,500 for building a detached structure without permission and imposed a $25 fine for each day the structure was not approved. Undeterred, the Cottons continued to build the pool pavilion until the project was completed on May 24, 2022.

The HOA later sued the Cottons, seeking injunctive relief, unpaid fines, and attorney fees. In doing so, the HOA requested a permanent injunction requiring the Cottons to cease any and all construction on the pool pavilion, take remedial steps to remove it, and restore the property to its original condition. The HOA also sought $6,100 in unpaid fines plus $25 per day until the Cottons cured the violation or

through the date of the judgment (whichever occurred first), accrued interest at the rate of 18 percent per annum, and post-judgment interest at the same rate.

The Cottons answered the complaint, denying many of its allegations and asserting affirmative defenses. Discovery ensued, and eventually, the parties cross-moved for summary judgment. The trial court denied both motions. The case then proceeded to trial; and following the conclusion of the HOA's case, the Cottons moved for a directed verdict. That motion was also denied. After the parties' opposing arguments, the court denied the Cottons' motion.[9] Ultimately, the jury rendered a verdict in favor of the HOA, making several factual findings on the verdict form and awarding the HOA $6,475 in unpaid fines, as well as $73,000 for attorney fees.

Before the trial court entered judgment on the jury's verdict, the Cottons filed a motion for a stay of the imposition of injunctive relief during the pendency of an appeal. After a hearing on the matter, the trial court entered its final judgment on the jury's verdict; and in the same order, the court granted the HOA's request for injunctive relief. More precisely, the court ordered the Cottons to "remove the entire

---

[9] At the close of trial, the HOA filed a motion for a directed verdict and the Cottons renewed their earlier motion for same, but the trial court denied both motions.

detached structure, which is identified as the 'outdoor kitchen/pool pavilion' in the [HOA's] complaint" and to "restore the area on which the detached structure currently sits to its original condition." Although the order initially required the Cottons to complete these actions within 60 days, the court granted them a supersedeas bond of $230,000 to stay enforcement of the injunction pending appeal. This appeal follows.

When a jury returns a verdict, it must be affirmed "if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict."[10] Put another way, a jury verdict "will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law."[11] And we review a denial of a motion for a new trial "according to this same standard."[12] With

---

[10] *Yash Sols., LLC v. New York Glob. Consultants Corp.*, 352 Ga. App. 127, 132(1) (834 SE2d 126) (2019) (quotation marks omitted). Accord *Green v. Key Custom Homes, Inc.*, 302 Ga. App. 800, 802(1) (692 SE2d 56) (2010).

[11] *Yash Sols.,* 352 Ga. App. at 132(1) (quotation marks omitted). Accord *Green*, 302 Ga. App. at 802–03(1).

[12] *Yash Sols*, 352 Ga. App. at 132(1) (quotation marks omitted). Accord *Green*, 302 Ga. App. at 802(1).

this deferential standard of review in mind, we turn to the Cottons' specific claims of error.

1. The Cottons first argue the trial court erred in denying their motion for summary judgment because the rules the HOA sought to enforce are "unlawful greater restrictions." Because this case was resolved after a jury trial, this claim of error is moot.

As we have explained, after verdict and judgment, it is "too late to review a judgment denying a summary judgment because that judgment becomes moot when the court reviews the evidence upon the trial of the case."[13] The only exception to this rule is that

> if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial, then the denial of the motion is not rendered moot by the verdict and judgment. Under such circumstances, a party may appeal the denial of summary judgment as

---

[13] *AgSouth Farm Credit, ACA v. Gowen Timber Co.*, 336 Ga. App. 581, 586(1) (784 SE2d 913) (2016) (brackets and quotation marks omitted). Accord *Alexander L. Firm, P.C. v. Richburg*, 361 Ga. App. 376, 380(2) (864 SE2d 479) (2021).

part of the party's direct appeal from the final judgment, and the denial will be reviewed and determined by this Court.[14]

As a result, the HOA argues that because a jury decided this case, any challenge to the trial court's summary-judgment order is now moot. Indeed, the HOA contends that because the Cottons were allowed to "present their full case within the bounds of the law," including the issues raised at summary judgment, there is nothing for this Court to review and we should decline to address this claim of error.

In their reply brief, the Cottons contend this long-standing law is no longer relevant because OCGA § 5-6-34(d), which became effective on July 1, 2025, provides, in relevant part:

> Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section,[15] all judgments, rulings, or orders rendered in the case which are raised on appeal and *which may affect the proceedings below* shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing

---

[14] *AgSouth Farm Credit*, 336 Ga. App. at 586(1) (quotation marks omitted). Accord *Alexander L. Firm*, 361 Ga. App. at 380(2).

[15] Under OCGA § 5-6-34 (a)(1)(b), a litigant can appeal "[a]ll final judgments, that is to say, where the case is no longer pending in the court below ... ." Of course, the grant of summary judgment to a defendant as to all of plaintiff's claims is no longer pending below.

12

alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.[16]

And the Cottons also add that "[t]he issue of summary judgment is preserved for appeal in the posture of the evidence as it was when the motion for summary judgment was denied."[17]

But here, we need not decide whether the recently enacted version of OCGA § 5-6-34 alters our long-standing rule (detailed above) that after a jury renders a verdict, it is too late to review a trial court's denial of summary judgment.[18] This is because, in Georgia, to show reversible error, "there must be harm as well as error."[19] And significantly, the Cottons identify no evidence presented (or not presented) during the discovery phase of this proceeding before the summary-judgment ruling

---

[16] (Emphasis added).

[17] *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 340(9) (618 SE2d 87) (2005) (emphasis added).

[18] See *supra* note 13 & accompanying text.

[19] *Monitronics Int'l, Inc. v. Veasley*, 323 Ga. App. 126, 141(5) (746 SE2d 793) (2013) (punctuation omitted)). Accord *Teems v. Bates*, 300 Ga. App. 70, 77(2) (684 SE2d 662) (2009).

that would have had any bearing on the outcome of trial. In fact, the Cottons do not reference any evidence at all, and most of the relevant evidence is documentary and undisputed. Under these circumstances, the Cottons have not established that they were harmed by the trial court's summary-judgment order, and we will not review it.[20]

2. Next, the Cottons argue the trial court erred in denying their motion for a directed verdict under what they refer to as the *Saunders* standard. We disagree.

In relevant part, a trial court may only direct a verdict if "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[21] Indeed, if there is *any* evidence—even slight evidence—to "support the opposing party's case, granting a

---

[20] See *Madison v. State*, 281 Ga. 640, 642 (2)(b) (641 SE2d 789) (2007) ("[H]arm as well as error must be shown to authorize a reversal by this [C]ourt. When a plaintiff in error brings a case here, he must show error which has hurt him. This [C]ourt is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party." (quotation marks omitted)); *West v. State*, 300 Ga. App. 583, 584–85(1) (685 SE2d 486) (2009) ("In order to constitute reversible error, there must be harm as well as error."); *Newsome v. State*, 287 Ga. App. 356, 358 (651 SE2d 764) (2007) ("It is axiomatic that "[h]arm as well as error must be established by an appellant in order to secure a reversal of his conviction." (quotation marks and brackets omitted)).

[21] *Reeves v. Allstate Ins. Co.*, 371 Ga. App. 474, 474 (901 SE2d 223) (2024) (quotation marks omitted).

directed verdict is improper."[22] Significantly, we review the grant of a motion for directed verdict *de novo*, and we "must construe the evidence in favor of the nonmovant."[23] That said, we review matters of law *de novo*.[24]

Moreover, the declaration of a homeowners' association, including its restrictive covenants, is "considered a contract, and we therefore apply the normal rules of contract construction to determine the meaning of the terms therein."[25] And like contracts, restrictive covenants "will be construed to carry out the intention of the parties [as reflected by the relevant language of those covenants]."[26] So, when a covenant is "clear and unambiguous, it is attributed its plain meaning."[27] Simply put, if the "manifest intent of the parties, as reflected in the relevant text, can be

---

[22] Id. (quotation marks omitted).

[23] Id. (quotation marks omitted).

[24] See id. (noting that matters of law are reviewed de novo).

[25] *Pasha v. Battle Creek Homeowners Ass'n, Inc.*, 350 Ga. App. 433, 436(1) (829 SE2d 618) (2019) (quotation marks omitted).

[26] Id. (quotation marks omitted).

[27] Id. (quotation marks omitted).

ascertained from the covenants as a whole, no ambiguity exists, and there is no need for judicial construction."[28]

Here, the Cottons provide only a two-paragraph argument in support of this claim of error, noting that they "restate and incorporate" the arguments made in support of their first claim of error. But we have already declined to consider those arguments as they addressed the pretrial denial of their motion for summary judgment. Of course, the evidence before the trial court at the summary-judgment stage is not necessarily the same as the evidence presented at trial. And our standards of review are different for a trial court's ruling on a motion for a directed verdict and one for summary judgment.[29] Indeed, when there is "*any* evidence—even slight evidence—to support the opposing party's case, granting a directed verdict is improper."[30] Still, we will attempt to address the arguments raised by the Cottons to

---

[28] Id. at 437(1) (quotation marks omitted).

[29] See supra notes 21–24 & accompanying text; *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

[30] *King v. Ga. Dep't of Corr.*, 347 Ga. App. 606, 606 (820 SE2d 445) (2018).

support their first claim of error but only if they are limited to the evidence presented *at trial*.[31] And in doing so, we will apply the standard of review applicable to rulings on a directed verdict, which is deferential to the HOA (as the nonmovant).[32]

As to the alleged "*Saunders* standard," the Cottons quote the following language from that opinion:

> Where ... the declaration [of an HOA] delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.[33]

---

[31] In seeking to apply the Cottons' summary-judgment arguments in the context of the trial court's directed-verdict ruling, we caution that "if we have missed something in the record or misconstrued an argument, the responsibility rests with [the Cottons'] counsel." *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 18 n.3 (849 SE2d 746) (2020) (quotation marks omitted).

[32] See supra notes 21-24 & accompanying text.

[33] *Saunders*, 265 Ga. at 704(2). In *Saunders*, which involved the grant of summary judgment to an HOA, our Supreme Court held that "[s]ince the homeowners' association, *vested with the discretion given it by the declaration*, resolved the issue of design conformity against appellants, there [was] no factual issue concerning the conformity of the new units for resolution by a jury ... ." Id. at 704–05(2) (emphasis added). The *Saunders* Court did not address whether the HOA's decisions were made arbitrarily, capriciously, or in bad faith because the appellants did not raise those issues. See id.

17

The Cottons maintain that the relevant questions under *Saunders* are whether the HOA and ARC's denial of their proposed structure was "(1) made in good faith, and reasonable and[ ] not arbitrary and capricious, and (2) procedurally fair and reasonable." The Cottons also claim the ARC's decision to reject their proposal was "unreasonable, arbitrary, and capricious" because they satisfied the only "substantive covenant," which addressed "colors and materials."[34] But the Cottons cite *no* evidence—documentary or otherwise—designating some of the design-guideline requirements as "substantive" and others as nonsubstantive or merely optional. Instead, they appear to claim they never agreed to the design guidelines to begin with, as they were only subject to the provisions in the Declaration, which included requirements about colors and materials. This contention is belied by the record.

---

[34] In support this contention, the Cottons cite *Winslette v. Keeler*, 220 Ga. 100 (137 SE2d 288) (1964), in which our Supreme Court held that when "the plaintiff has submitted plans for the building of a residence on his lot which meet *all* the requirements of the covenant and the defendant refuses to approve them[,] the defendant's refusal of the defendant to approve the plans is unreasonable, arbitrary, and capricious[.]" Id. 103(2) (emphasis added). But it is undisputed that the Cottons' proposed pool pavilion violated *several* of the Declaration and design guidelines' requirements. *Winslette*, then, is inapt.

As explained above, under Article VI, Section 10 of the HOA's Declaration,

> [n]o exterior construction, addition, erection, or alteration shall be made unless and until the plans and specifications showing the nature, kind, shape, height, materials, and location shall have been submitted in writing to and approved by the Board or its designee. The Board *or its designee [i.e. the ARC] may promulgate written guidelines* for exercise of this review.

> The Board *or its designee* shall be the *sole* arbiter of such plans and may withhold approval for *any reason*, including purely aesthetic considerations, and *it shall be entitled to stop* any construction in violations of these restrictions.[35]

So, the plain language of the *Declaration* informed residents that the HOA reserved the right to promulgate separate, written design guidelines for proposed construction, and the HOA would have the authority to reject a proposed project for *any reason*.

Even so, the Cottons argue the design guidelines are unlawful "greater restrictions" under OCGA § 44-5-60(d)(4) because they "never consented to" them. OCGA § 44-5-60(d)(4) provides that "[n]otwithstanding any other provision of this Code section or of any covenants with respect to the land, no change in the covenants

---

[35] (Emphasis added).

19

which imposes a greater restriction on the use or development of the land will be enforced *unless agreed to in writing by the owner of the affected property at the time such change is made.*[36] But again, by consenting to be bound by the Declaration, the Cottons agreed *in writing* that the HOA or its designee reserved the right to implement new guidelines for building detached structures. We are unpersuaded, then, that the trial court ignored our Supreme Court's decision in *Saunders* or violated OCGA § 44-5-60(d)(4) in denying their motion for a directed verdict.

3. The Cottons also claim the trial court erred in excluding evidence "about similar structures in the neighborhood" and testimony of their "direct neighbors" at trial. This claim likewise lacks merit.

As a general rule, admission of evidence is "a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[37] But evidence should be admitted if it is

---

[36] OCGA § 44-5-60(d)(4) (emphasis added).

[37] *Smith v. State*, 302 Ga. App. 128, 130 (690 SE2d 449) (2010) (quotation marks omitted). Accord *Sullivan v. State*, 242 Ga. App. 839, 840–41(3) (531 SE2d 367) (2000).

20

"admissible for any legitimate purpose."[38] Here, the Cottons complain generally that the court erred in excluding evidence about other structures built in their neighborhood, as well as unspecified testimony of unidentified neighbors. And while they detail the general law regarding admissibility of evidence, they abandoned this claim of error by failing to present a cognizable legal argument about the admissibility of any specific piece of proposed evidence.[39]

4. Next, the Cottons maintain the trial court erred by not instructing the jury on "greater restrictions," the *Saunders* standard, and the standard of compliance with the covenant procedures. Yet again, we disagree.

As our Supreme Court has explained, to warrant a requested jury instruction, it must be "legal, apt, and precisely adjusted to some principle involved in the case."[40]

---

[38] *Walsh v. State*, 283 Ga. App. 817, 818(2) (642 SE2d 879) (2007). Accord *Krebsbach v. State*, 209 Ga. App. 474, 474(1) (433 SE2d 649) (1993).

[39] See *In the Interest of K. R.*, 367 Ga. App. 668, 677(2)(b) (888 SE2d 204) (2023) ("[W]e have held that an argument is abandoned if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of her case."); *Seals v. State*, 350 Ga. App. 787, 789(1) (830 SE2d 315) (2019) (holding that a claim of error was abandoned when the only legal authority cited by the appellant was the standard for considering the issue).

[40] *Harrison v. State*, 310 Ga. 862, 866(2) (855 SE2d 546) (2021) (quotation marks omitted).

In other words, the only requirement regarding jury charges is that "they are correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence."[41] And to authorize a jury instruction on a subject, there need only be produced at trial "slight evidence supporting the theory of the charge."[42] In sum, jury charges must be "adjusted to the evidence in the case,"[43] and "[w]e review those charges *de novo*."[44]

Given our holding in Division 2 *supra*, the trial court did not err in failing to give jury instructions related to the *Saunders* case or greater restrictions. Indeed, such instructions were not tailored to the evidence presented at trial; and if anything, might have confused the jury. Even so, the Cottons argue the trial court erred by failing to instruct the jury on "the standard of compliance with the covenant procedures,"

---

[41] *Mulkey v. State*, 366 Ga. App. 427, 433–34(2) (883 SE2d 173) (2023) (quotation marks omitted).

[42] *Jones v. State*, 287 Ga. 770, 771(2) (700 SE2d 350) (2010) (quotation marks omitted).

[43] *Millen v. State*, 267 Ga. App. 879, 881(2)(a)(i) (600 SE2d 604) (2004). See *Nations v. State*, 345 Ga. App. 92, 100(3) (812 SE2d 346) (2018) ("It is axiomatic that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." (punctuation omitted)).

[44] *Hines v. State*, 350 Ga. App. 752, 759(2) (830 SE2d 380) (2019).

alleging that no evidence was presented that they (or any other homeowner) voted to adopt the design guidelines. But again, as explained in Division 2, by signing the Declaration, homeowners consented to allowing the HOA or its representative promulgate design guidelines *and* to the HOA or its representative being the *sole* arbiter of proposed construction plans—which could be rejected *for any reason.* The Cottons have identified no provision of the Declaration or other contract, then, requiring a separate vote by residents to approve design guidelines.

The Cottons also contend the trial court erroneously failed to instruct the jury that "subsantial compliance" with covenant procedures is all that is required; and they claim the trial court erred in not instructing the jury that the HOA and ARC's actions must be fair and reasonable. But in support, the Cottons cite only a single case with no discussion of the case or how it applies here. And at a minimum, legal argument requires a "discussion of the appropriate law as applied to the relevant facts, and a mere reference to a case citation to support a conclusory allegation is not the

type of meaningful argument contemplated by our rules."[45] The Cottons have not shown, then, that the trial court erred in declining to give the jury charges at issue.

5. Next, the Cottons maintain the trial court erred by granting the HOA's request for a permanent injunction after the verdict was rendered, the jury dispersed, and no notice of a bifurcated proceeding on injunctive relief was given. Once again, we disagree.

As to this claim, the Cottons correctly note that the jury's verdict did not address whether an injunction should be granted. Instead, the jury awarded the HOA $6,475 in unpaid fines, as well as $73,000 for attorney fees. But the jury also made the following factual findings: (1) the Cottons' detached structure violated the HOA's Declaration and design guidelines; (2) the HOA Board and the ARC's denial of the Cottons' modification request was not fair and reasonable;[46] (3) the HOA did not

---

[45] *Arnold v. Fairway Mgmt., Inc.*, 376 Ga. App. 34, 43(b)(3)(iii)(918 SE2d 56) (2025) (punctuation omitted). See *Patterson v. Prof' Res., Inc.*, 140 Ga. App. 315, 316(3) (231 SE2d 88) (1976) ("When ... the brief contains nothing more than a statement of contentions unsupported by citation of legal authority, the enumerations of error must be deemed abandoned under Rule [25(d)(1)] of this Court." (quotation marks omitted)).

[46] We acknowledge that this factual finding appears to be inconsistent with the jury's other factual findings and its verdict as a whole, but this discrepancy is not dispositive of any of the arguments the Cottons raise on appeal. Moreover,

prejudice the Cottons by unreasonably delaying its lawsuit against them; and (4) the HOA did not selectively enforce the rules about detached structures. Following the jury's verdict, the trial court held a hearing solely on the HOA's request for a permanent injunction (*i.e.*, requiring the Cottons to cease construction on the pool pavilion, take remedial steps to remove the unapproved structure, and restore the property to its original condition). As mentioned above, the trial court granted the HOA's request for a permanent injunction and ordered the Cottons to "remove the entire detached structure, which is identified as the 'outdoor kitchen/pool pavilion' in the [HOA's] complaint" and to "restore the area on which the detached structure currently sits to its original condition." That order was stayed pending the resolution of this appeal.

In making their argument, the Cottons rely on OCGA § 9-12-7, which provides "[a] verdict may be *amended* in mere matter of form after the jury has dispersed. But after a verdict has been received and recorded and the jury has dispersed, it may *not*

_____

presumptions favor the validity of verdicts "and a construction, if possible, will be given which will uphold them." *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550, 554(3) (691 SE2d 344) (2010) (punctuation omitted). Here, a potential inconsistency in the jury's specific factual findings does not preclude us from upholding its ultimate verdict, awarding the HOA unpaid fines and attorney fees.

*be amended in matter of substance* either by what the jurors say they intended to find or otherwise."[47] And here, the trial court did not substantively amend the jury's verdict by holding a post-trial hearing and ruling on the HOA's request for injunctive relief. Instead, it allowed the jury to rule on the HOA's claims for unpaid fines and attorney fees, as well as make factual findings. In this regard, we have held that "[a] party has no statutory or constitutional right to a trial by jury in an equity action, and the seeking of a temporary and permanent injunction is an action in equity."[48] Even so, a superior court judge "may choose to use a jury to return a special verdict in an equity case with

---

[47] (Emphasis added).

[48] *Montana v. Blount*, 232 Ga. App. 782, 786(1)(b) (504 SE2d 447) (1998). See *Hanson v. First State Bank & Tr.*, 254 Ga. 235, 236 (327 SE2d 730) (1985) ("There is no constitutional right to a trial by a jury in equity cases."); *Cawthon v. Douglas County*, 248 Ga. 760, 763(1) (286 SE2d 30) (1982) ("[T]here is no statutory right to trial by jury in equity cases in general."); *Williams v. Overstreet*, 230 Ga. 112, 115(III) (195 SE2d 906) (1973) (holding that there is no constitutional right to a trial by jury in an action relegated to the "equity area," and such a right, if it exists, must be conferred by the enactment of a statute by our General Assembly). See also *Lutz v. GreenSky, LLC*, 369 Ga. App. 518, 522(4)(b) (894 SE2d 104) (2023) ("Injunctions are the quintessential form of equitable relief." (quotation marks omitted)).

disputed issues of material fact."[49] And as detailed above, the trial court did just that by including several questions of fact on the verdict form.

So, although the Cottons had no right to a jury trial on the HOA's request for injunctive relief, they still argue the trial court erred in ruling on the request after the trial concluded and jury dispersed. In doing so, they rely heavily on our Supreme Court's decision in *Otwell v. Dorsey*,[50] contending it illustrates how OCGA § 9-12-7, as quoted above, applies when a plaintiff seeks both damages and equitable relief. In *Otwell*, our Supreme Court explained that the plaintiff did not present her case "purely on equitable theories[,]"[51] as in her complaint and in the pretrial order, she sought both damages *and* equitable relief.[52] But at trial, the plaintiff "asked the jury

---

[49] *Montana*, 232 Ga. App. at 786(1)(b). See *Turner Advert. Co. v. Garcia*, 251 Ga. 46, 48(4) (302 SE2d 547) (1983) ("Although a trial court trying a suit for injunction may empanel a jury to render special verdicts, the court is not required to do so."); *Guhl v. Davis*, 242 Ga. 356, 357 (249 SE2d 43) (1978) ("Although there is no right to a jury trial, the court may call for special verdicts if, in its discretion, it desires to seek a jury's aid as a fact finding body to resolve specific factual disputes. The court then will have the facts as determined by the jury's special verdict in deciding the ultimate constitutional issue. This is true whether the case arises *in equity*, or as a declaratory judgment or mandamus action."(emphasis added)).

[50] 265 Ga. 483 (457 SE2d 810) (1995).

[51] Id. at 484 n.1.

[52] See id.

to return monetary damages on all counts as her *entire relief*."[53] Under those circumstances, the trial court "had no authority to exercise its equitable powers to grant her *additional* relief."[54] Thus, *Otwell* is distinguishable because at no point did the HOA ever contend it was *only* seeking monetary damages.

The Cottons also complain that the "verdict form limited itself to damages, and the jury was not instructed on injunctive relief in any way." But as explained above, the Cottons were not entitled to a jury verdict on the HOA's request for an injunction; and while the trial court was permitted to include factual findings on the verdict form to potentially influence its decision on injunctive relief, it was not required to do so.[55]

Finally, the Cottons argue they were prejudiced by the trial court's failure to give them notice of the bifurcated proceedings. More precisely, they contend that if they had known the trial court "would hold a bench trial on the merits of the injunction (and determine the credibility of witness in that regard), they would have streamlined their case to the jury[ ] and presented evidence in a different order, or

[53] Id. (emphasis added).

[54] Id. (emphasis added).

[55] See supra note 49.

made other strategic decisions." But in support, the only "evidentiary" example they provide is a statement made by *the HOA* in its closing argument.

Again, to show reversible error, there must be harm as well as error.[56] And here, the Cottons have identified *no* evidence in the record establishing that they were harmed by the trial court holding a post-trial proceeding on the HOA's request for injunctive relief. Indeed, other than arguing generally that they would have "streamlined" the evidence they presented or made different strategic decisions, they fail to identify any *specific* strategic decision they would have made differently. In any event, Georgia law is clear that the Cottons were not entitled to a jury trial regarding equitable relief, and the trial court was permitted to rule on that issue.[57]

6. Lastly, the Cottons argue the trial court erred when issuing the injunction by failing to balance the harms among the parties. This claim is a nonstarter.

We have held that entry of a permanent injunction is "appropriate only in clear and urgent cases where there is a vital necessity to prevent a party from being damaged

---

[56] See supra notes 19-20 & accompanying text.

[57] See supra notes 48 & accompanying text.

and left without an adequate remedy at law."[58] But injunctions should be granted "cautiously and only if there was no adequate remedy at law; if the evidence showed that the plaintiff would suffer irreparable harm; and, in balancing the harm to the parties, if the superior court in the exercise of its discretion found that equity demanded the grant of the injunction."[59] And equitable relief is "a matter within the sound discretion of the trial court."[60] Indeed, the grant of a permanent injunction is "to be sustained on review unless the trial court has manifestly abused its

---

[58] *Savannah Cemetery Grp., Inc. v. DePue-Wilbert Vault Co.*, 307 Ga. App. 206, 210 (704 SE2d 858) (2010). See *Lane Dermatology v. Smith*, 360 Ga. App. 370, 376(1)(c) (861 SE2d 196) (2021) ("Courts of equity will not exercise the power of injunctive relief to allay mere apprehensions of injury, but only where the injury is imminent and irreparable and there is no adequate remedy at law." (quotation marks omitted)).

[59] *City of Duluth v. Riverbrooke Props., Inc.*, 233 Ga. App. 46, 55(4) (502 SE2d 806) (1998). Cf. *Lane Dermatology*, 360 Ga. App. at 373(1)(c) ("[I]n deciding whether to issue an interlocutory injunction, the trial court should consider whether[,] ... there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted ... ." (quotation marks omitted)).

[60] *Savannah Cemetery Grp.*, 307 Ga. App. at 210. See *Lane Dermatology*, 360 Ga. App. at 373(1)(c) ("Although an interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised, the trial court is vested with broad discretion in making that decision." (quotation marks omitted)).

discretion."[61] And a trial court "manifestly abuses its discretion when it grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity."[62] Moreover, when fashioning injunctive relief, the court is "obligated to adopt the least oppressive means of affording relief."[63]

Here, it is undisputed that the HOA would be harmed if the trial court denied its request for injunctive relief, allowing the Cottons to retain their noncompliant pool pavilion, and the Cottons will be harmed financially if they are forced to tear it down. But at trial, the jury expressly found—and the evidence showed—that the Cottons' detached structure violated the HOA's Declaration and design guidelines, but they nonetheless completed construction after being warned more than once that it was noncompliant. Crucially, the Cottons have not identified an adequate remedy at law that the HOA has to restore their noncompliant property to its original condition.

---

[61] *Savannah Cemetery Grp.*, 307 Ga. App. at 210. See *Teachers' Ret. Sys. of State of Ga. v. Forehand*, 234 Ga. App. 437, 438 (506 SE2d 913) (1998) ("Since this is an appeal from the grant of a permanent injunction, then the standard of review is whether or not the trial court manifestly abused its discretion." (quotation marks omitted)).

[62] *Savannah Cemetery Grp.*, 307 Ga. App. at 210. Accord *Forehand*, 234 Ga. App. at 438.

[63] *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 691(6) (681 SE2d 122) (2009).

They also have not identified a less oppressive means by which the HOA could do so.[64]

In *Focus Entertainment International, Inc. v. Partridge Greene, Inc.*,[65] we explained that "[l]and, under Georgia law, is deemed sufficiently unique that it is entitled to equitable remedies to protect such interest in land."[66] So, when an interest in land is

---

[64] Other than providing general law about the grant of injunctions and attempting to distinguish or disregard cases cited by the HOA, the Cottons rely almost exclusively on *Riverwood Homeowners Ass'n, Inc. v. Jones*, 351 Ga. App. 716 (832 SE2d 868) (2019). In doing so, they reference the trial court's finding that when the homeowner installed a retaining wall, under the HOA's Declaration, the HOA was entitled to "enjoin or remove" such construction, but the owner was ordered only to resurface the wall instead. See id. at 718. Although the Cottons accurately describe the trial court's findings, in *Jones*, this Court only addressed arguments related to an attorney-fee award. See id at 718–21(1)–(2). Thus, *Jones* is not relevant to our resolution of this appeal.

[65] 253 Ga. App. 121 (558 SE2d 440) (2001) (physical precedent only). We note that "while physical-precedent opinions are not binding, we do often consider such opinions to be persuasive authority." *Wilson v. Inthachak*, 372 Ga. App. 341, 354 n.28 (904 SE2d 414) (2024) (Dillard, P.J., concurring in part and dissenting in part). See *Muldrow v. State*, 322 Ga. App. 190, 195(3) n.29 (744 SE2d 413) (2013) ("[S]ome of the judges on this Court are of the view that our physical-precedent cases should be afforded greater consideration than decisions from appellate courts in other jurisdictions. Nevertheless, it is crucial that litigants explicitly designate physical precedent as such, and thoroughly explain why this Court should adopt the reasoning from that particular opinion.").

[66] *Focus Ent. International*, 253 Ga. App. at 127(4)(a).

threatened with harm, "equitable injunctive relief is appropriate, because such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed."[67] Irreparable harm automatically occurs

> as a matter of law arising from a violation of a covenant running with the land, the relationship of the parties as grantor-grantee, and the consideration of the conveyance of less than a fee simple absolute for the burden imposed upon the land in the form of a restrictive covenant to protect the grantor and others who may wish to purchase the remaining land in the future.[68]

As a result, no special showing of irreparable harm is "necessary other than the violation of a valid restrictive covenant."[69] And because the Cottons violated a valid restrictive covenant, the trial court was not required to balance the harms between the parties because the HOA need not demonstrate a special showing of irreparable harm.

In sum, the Cottons completed construction on a pool pavilion they knew violated several of the HOA's design guidelines, and they never obtained approval

---

[67] Id.

[68] Id. at 127–28(4)(a).

[69] Id.

from the HOA or ARC to build the pavilion, which they knew was required. As a result, the Cottons were instructed to halt construction until the pavilion project was approved. The Cottons have not identified any remedy at law or less oppressive means than a permanent injunction to compensate the HOA for the harm it suffered. Under these circumstances, the Cottons have not shown the trial court erred by failing to "balance the harms" between the parties in issuing the permanent injunction.

For all these reasons, we affirm the jury's verdict, as well as the trial court's grant of injunctive relief to the HOA.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*